530 F.Supp. 1033 (1981)
The ABC LEAGUE, a voluntary unincorporated association, and Andrew T. Nelson, a minor by his next friend, his father, Richard T. Nelson, Plaintiffs,
v.
MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, a voluntary unincorporated association, Defendant.
No. 81-608C(1).
United States District Court, E. D. Missouri, E. D.
December 23, 1981.
As Amended January 25, 1982.
*1034 *1035 *1036 Stuart Symington, Jr., Lemoine Skinner, III, St. Louis, Mo., for plaintiffs.
J. Robert Tull, Columbia, Mo., Mark D. Sadow, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, Chief Judge.
On May 29, 1981, this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 was instituted by The ABC League on behalf of the private and religious schools that are its members and by Richard T. Nelson, as next friend, father and guardian of Andrew T. Nelson. Plaintiffs asked the Court to determine whether defendant Missouri State High School Activities Association (hereinafter MSHSAA), may in accordance with the constitution prohibit Andrew T. Nelson from competing in intra-ABC League games that do not affect the opportunity of members of the League to participate in MSHSAA sponsored play-offs or tournaments by repealing Article VIII, Section 10 of the MSHSAA constitution (ABC League exemption). Plaintiff also questions whether Article VIII, Section 8 (transfer rule) of the MSHSAA constitution is constitutional even if conferences, e.g., The ABC League, are exempted from its scope in intra-conference play. Jurisdiction is predicated on 28 U.S.C. § 1331, 1343(3)(4). Since the impact of the MSHSAA regulation and of the injury complained of will be felt in St. Louis and St. Louis County, venue is proper in the Eastern District of Missouri. 28 U.S.C. § 1391(a).
Until May, 1981, The ABC League was exempt from the eligibility rules of the MSHSAA constitution in intra-league games that did not affect the opportunity of league members to partake in MSHSAA sponsored play-offs or tournaments. In effect, The ABC League exemption allowed The ABC League to play transfer students in interscholastic contests between ABC League schools only. ABC League transfer students were ineligible, under the transfer rule, to compete in contests between ABC League schools and other MSHSAA schools.[1] Shortly after the court decided in Barnhorst v. Missouri State High School Activities Association, No. 80-1036-CV-W-4-3 (April 8, 1981), to enjoin further application of The ABC League exemption (Article VIII, Section 10 of the MSHSAA constitution), the MSHSAA voted to eliminate this exemption. Defendant now seeks to apply to plaintiffs, in intra-ABC League games, Article VIII, Section 8 of the MSHSAA constitution (the transfer rule) which mandates that transfer students may *1037 not participate in interscholastic athletics during the first year after their transfer.
The Court concluded a bench trial which involved the taking of evidence over a period of three days in August, 1981. After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law applicable as a finding of fact is adopted as such.

Findings of Fact
1. The plaintiff The ABC League is a voluntary unincorporated association formed in 1928 by a group of independent private schools in the St. Louis, Missouri metropolitan area to engage in and encourage athletic competition in team sports. The current membership of The ABC League consists of six (6) schools as follows: The St. Louis Country Day School and the John Burroughs School, which are private schools without religious affiliation, St. Louis Priory School, which is administered by the Benedictine Order of the Roman Catholic Church, the Principia, a school for the sons and daughters of Christian Scientists, Lutheran High School North and Lutheran High School South, which are owned and controlled by a not-for-profit Missouri corporation formed by seventy nine (79) Lutheran congregations for the purpose of offering religious and academic instruction. All of the schools are located in St. Louis County, Missouri. All schools belonging to The ABC League are members of the MSHSAA. Since its inception, two of the principal purposes of The ABC League have been to establish uniform eligibility rules and interscholastic athletic competition among its member schools, and to raise interscholastic athletics to the highest plane of personal development, good leadership and good sportsmanship.
2. Plaintiff, Andrew T. Nelson (Nelson) is a fifteen (15) year old student who completed the ninth grade at the St. Louis Country Day School in the spring of 1981 and has transferred into the tenth (10th) grade of John Burroughs School for the school year beginning in September, 1981. He brings this action through his next friend, Richard T. Nelson, his father and natural guardian. Nelson seeks to participate in ABC contests in football at the B level and wrestling and track at the A level at John Burroughs School.
3. Defendant MSHSAA is a voluntary unincorporated association of private and public junior and senior high schools formed in 1926 as an athletic association. Virtually all high schools in Missouri, including member schools of The ABC League, are members of the MSHSAA. Recently, MSHSAA has begun to set standards for speech, debate and music in junior and senior high schools. MSHSAA apparently seeks to permeate every area of junior high school and senior high school life in the State of Missouri. The principal purposes of the MSHSAA since its formation have been to establish uniform eligibility rules in interscholastic competition among its members, and to improve athletic relations by controlling any eligibility abuses that might occur in interscholastic sports.
4. MSHSAA has approximately five hundred and seventy five (575) senior high schools and two hundred (200) junior high schools in its membership. Of these schools, approximately ninety per cent (90%) are public, while the remainder are private or parochial. Programs administered by the Association affect some five hundred thousand (500,000) students in Missouri. Nearly all of the public senior high schools of Missouri are members of the Association, and approximately eighty per cent (80%) of the public junior high schools are also members. The governing structure of the Association is essentially democratic in nature; member schools collectively exercise legislative authority to adopt, amend or repeal constitutional provisions and by-laws; executive and administrative responsibilities concerning enforcement of MSHSAA policies and rules are entrusted to the Executive Secretary of the Association; and judicial authority *1038 is vested in an eight member Board of Control "to interpret the rules and provisions of the Constitution and By-Laws of the Association and ... be the final judge as to whether a violation has occurred." MSHSAA Constitution, Art. IV, Section 6(g). The eight individuals on the Board represent eight geographical districts within the State of Missouri and are selected by schools within each of the districts; each of the individuals is either a principal or a superintendent of a public school in his or her respective district. Local school boards have input into the formulation and enforcement of MSHSAA policies and rules through the district representatives.
5. MSHSAA also receives input from a liaison committee composed of representatives from the Missouri State Department of Education, the Missouri School Board Association and the Missouri Association of School Administrators. That committee periodically reviews MSHSAA policies and rules and makes recommendations for revisions. The Missouri State Department of Education has statutory authority to regulate interscholastic educational activities only during normal, six hour days; however, it has been the custom of the Department to advise MSHSAA through the liaison committee as to interscholastic activities conducted during periods outside the six hour day. Consequently, the Department and the State of Missouri have recognized MSHSAA as the official regulatory body in the area of interscholastic activities occurring outside the normal school day for at least the last fourteen years. Moreover, approximately seventy five per cent (75%) of all contests and competitive activities of member schools of MSHSAA occur on property owned by the State or municipalities.
6. MSHSAA was initially formed to establish uniform rules and standards for interconference play between Missouri schools. It was in these interconference games that disputes arose. Initially, MSHSAA permitted any conference to adopt its own eligibility and playing rules in sports.
7. The first constitution of MSHSAA, in 1926, contained a transfer and eligibility rule which is substantially the same as the eligibility rule found in today's MSHSAA's constitution in Article VIII, Section 8 (transfer rule). That Article provides that students who voluntarily transfer for reasons other than promotion from grade school to high school or from junior high school to senior high school are ineligible for three hundred and sixty five (365) days to represent their new school in interscholastic competition with other members of MSHSAA.
8. The original transfer rule (Article VIII, Section 8) was adopted to remedy conditions prevailing in the early days of Missouri High Schools. In those days, in which there were a large number of two and three year high schools, athletes would commonly move from one school to another to play sports. The overriding reason for the transfer rule was to stop "school-hopping" (transfers for primarily athletic reasons). The present justification for the transfer rule remains the prevention of recruiting abuses. To mitigate the severity of the transfer rule, MSHSAA adopted the hardship provision, Article VII, Section 10 of the MSHSAA constitution, which provides:
The Board of Control is authorized to grant eligibility to a student in a case that is beyond the control of a student or his (her) parents, which in the opinion of the Board involves undue hardship or an emergency and does not violate the intent of any of the standards of eligibility. Cases involving any choice on the part of the student or parents shall not be heard under this section.
The Board of Control's applications of the hardship rule have been subjective, arbitrary, and ad hoc. Mr. Irwin Keller, former Executive Secretary of the MSHSAA, testified that during his tenure the Board of Control applied the hardship provision to allow a student to transfer to a new school (and engage in interscholastic activities) because his former school did not offer chemistry and physics. However, Mr. Keller's successor, Jack Miles, in his testimony indicated *1039 that to allow a student to transfer for educational reasons would open the door to numerous abuses because it would be difficult to monitor whether the student was actually transferring for educational as opposed to athletic reasons. In the instant case, MSHSAA would not apply the hardship rule to enable Andrew Nelson to transfer to John Burroughs School because of his preference for the philosophy, atmosphere, and structure of Burroughs.
9. MSHSAA witness Keller testified that the transfer rule (Article VIII, Section 8) "probably has been the most amended rule in the constitution." While exemptions to the transfer rule have been broadened in recent years, Mr. Keller, in answer to a hypothetical question, stated that had he the power to recommend another change in the transfer rule, he would recommend that The ABC League's transfer exemption be broadened to apply in all schools in Missouri below the varsity level without discrimination. It should be noted that at one time, the MSHSAA constitution contained a provision allowing a transfer student to become eligible if the principal of his old school and the principal of his new school both signed a release form stating that the boy should be considered eligible and there was no reason why he should not be. However, the membership of the MSHSAA voted this exemption out because "if this principal didn't sign the release he was the one who caught the brunt of criticism because most people would sympathize with the youngster and would not understand the principal's reasons." Tr. 192. When questioned about the removal of this rule, defendant could offer no further justification. Clearly, MSHSAA seeks to promote harmony among institutions even if it is at the expense of the student athlete.
10. There is no transfer rule or recruiting rule for MSHSAA regulated competitions in speech, music and debate.
11. In 1957, the MSHSAA adopted for the first time a recruiting rule, which was specifically designed to deter improper recruiting. That rule provides:
A student shall not have transferred from one school to another BECAUSE OF SOLICITATION OR INFLUENCE of anyone connected with the school or because of the undue influence of any individual or group outside the school. In case of such transfer the student shall be ineligible for three hundred and sixty five (365) days, and the school shall be penalized if the influence is exerted by anyone connected with the school. (emphasis in original). MSHSAA Constitution Article VII, Section 6.
The issue of recruiting gained prominence with the recent growth of attention and interest in state senior high school tournaments and playoffs.
12. MSHSAA and The ABC League are in complete agreement in their opposition to recruiting for athletic purposes alone. In fact, The ABC League adopted its own anti-recruiting policy almost thirty (30) years before MSHSAA adopted its anti-recruiting policy. MSHSAA could not explain why the recruiting rule could not be a viable means of regulating recruiting abuses should they occur. MSHSAA reliance on the transfer rule to combat recruiting abuses, as opposed to the unused recruiting rule, places the onus of deterring recruiting on the innocent student instead of the MSHSAA.
13. The forty (40) year trouble free history of The ABC League exemption, the exhaustive testimony of plaintiffs and defendants' witnesses concerning the highly selective admissions policies, high academic standards, scholarship award procedures and academic philosophy of The ABC League member schools demonstrates that the grant of The ABC League exemption has not interfered with the policy of MSHSAA to prevent recruiting abuses, school hopping and unfair competition in high school athletics in the state of Missouri.
14. Quality students are attracted to The ABC League Schools by the League's excellent all-around academic reputation. Athletic programs within The ABC League have not enjoyed the reputation which *1040 would attract students to member schools for strictly athletic reasons, i.e., college scholarships.
15. Interscholastic athletics are made available to as many young men as possible in The ABC League schools. Unlike MSHSAA member schools, a majority of schools in the League require all students as part of their educational curriculum to participate in some form of interscholastic athletic competition. To facilitate this universal participation, The ABC League is divided into three (3) levels based upon an exponent system which takes into account the factors of the semester in which the boys are enrolled, and their age, height and weight. The three levels are the A, B and C level. The A level is the varsity level for competition with MSHSAA schools. The schools in The ABC League emphasize each level equally. Eligibility qualifications for the three levels are maintained and policed through periodic exchanges of player information lists between The ABC League schools.
16. It is undisputed that recruiting abuses have been singularly absent in The ABC League and rare in the MSHSAA as a whole. This absence of recruiting abuses can be attributed to the philosophy of The ABC League which strives to "place the welfare and education of the individual boy, whether he is large or small, experienced or inexperienced, ahead of the welfare of the (sports) program or the fortunes of member schools." Tr. 307. The Court finds that The ABC League schools do not recruit students for athletic reasons or award or permit athletic scholarships. Tuition is predicated upon the student's actual need.
17. Competition between young men is viewed as an important ingredient in the philosophy of each ABC League school. The ABC League seeks to instill in its students through various competitions the values of teamwork, leadership, good sportsmanship, citizenship and respect for the rights and abilities of other individuals and groups.
18. The ABC League schools compete not only with member schools but also with various parochial, private and public school members of MSHSAA. The ABC League has always considered itself bound by the rules and regulations of the MSHSAA and has complied with those rules. Most ABC League schools have enrolled every year at least two or three transfer students.
19. Article VIII, Section 10 of the MSHSAA constitution provided that the eligibility rules of Article VII and Article VIII of the MSHSAA constitution shall not be applied to sports competition in The ABC League. The purpose behind the exemption was twofold. One purpose is to further The ABC League philosophy of equal student participation in the total education program of The ABC League schools. The second reason was The ABC League's desire to preserve to themselves the right to regulate their own private conduct. The MSHSAA was aware of these justifications and desires at all times.
20. Article VIII, Section 8, as interpreted by The ABC League and the MSHSAA, disqualified The ABC League transfer students from participating in regular play and post-season MSHSAA play not involving ABC League schools. Subsequently Section 10 was amended to preclude ABC League transfer students from participating in intra ABC League football games at the A level so as not to affect the MSHSAA ratings procedure for post-season play. In all other sports, the results of intra-league games between ABC League members have no effect on post-season play-offs and state championships sponsored by MSHSAA, because the play-off program established by MSHSAA in these other sports precludes the use of transfer students, even ABC League transfer students. Moreover, postseason play-offs seedings are based upon subjective criteria, hence any advantage achieved in intra-ABC League play by transfers can be discounted by the coaches involved in the seeding procedure. Any advantage accorded The ABC League teams by the use of transfer students in intra-ABC League games is totally offset by the detriment teams will suffer when those same transfer students cannot compete *1041 against non-ABC League teams. The Court finds that Article VIII, Section 10 did not give The ABC League schools an advantage over other MSHSAA schools in various inter-scholastic competitions. The Court further finds that Article VIII, Section 8 (transfer rule) is unnecessary to prevent school hopping to ABC League schools or to protect ABC League potential and active students from the pressures of professional contests and recruiting. This finding is based upon The ABC League's uncontradicted policy against recruiting and plaintiffs' educational philosophy which stresses the development of the body, mind and spirit by making participating in the interscholastic sports available to all in a context free from professional pressures and emphasis on winning on all costs.
21. No other conference in the MSHSAA ever asked for an exemption from the transfer rule of Article VIII, Section 8 for intra-conference play, although the MSHSAA constitution provided for the means for making such a request.
22. Article VIII, Section 10, as interpreted by MSHSAA and as The ABC League has abided by it, was consonant with and did not conflict with the principal reasons behind the MSHSAA's establishment of uniform eligibility rules and interscholastic competition among its members. With only one exception, neither MSHSAA, its executive directors, its Board of Control, its athletic committees, or its member schools have ever complained to The ABC League prior to December, 1980 that any provision of The ABC League exemption, Article VIII, Section 10 was unfair or needed amendment. The lone exception occurred when it appeared that the results of the ABC League intra-league football competition would affect eligibility for state football play-offs. The ABC League exemption was promptly amended to exclude A level football from the exemption and to remedy this complaint. Otherwise, no complaints have ever been directed against The ABC League about unfairness in competition, improper recruiting or school hopping.
23. On December 16, 1980 Judge Russell G. Clark in Barnhorst v. Missouri State High School Activities Association et al., 504 F.Supp. 449, 456-57 (W.D.Mo.1980) held that the regulation of transfer eligibility by MSHSAA constituted state action within the purview of the Fourteenth Amendment of the United States Constitution. On April 8, 1981, the same Court in Barnhorst v. Missouri State High School Activities Association, et al., No. 80-1036-CV-W-4-3 (W.D. April 8, 1981) also held that Article VIII, Section 10 of the MSHSAA constitution unfairly discriminated between transfer students in The ABC League and transfer students in other Missouri High Schools in violation of the Equal Protection Clause of the Fourteenth Amendment. This holding was made even though the plaintiff in Barnhorst at no time pleaded or showed that how she was injured by Article VIII, Section 10 or how she would benefit from a ruling that Article VIII, Section 10 was invalid under the Equal Protection Clause. Indeed, the Court in Barnhorst ruled that notwithstanding the invalidity of Article VIII, Section 10 plaintiff Barnhorst remained ineligible under the transfer rule of Section 8.
24. The ABC League was not advised that its exemption under Article VIII, Section 10 would be in controversy in the Barnhorst action. Nor was The ABC League made a party to the Barnhorst action. Once The ABC League exemption came into issue in Barnhorst, the MSHSAA staff failed to offer a current justification for the exemption. Furthermore, MSHSAA, for all intents and purposes, abandoned The ABC League exemption in the middle of trial. The MSHSAA staff advised the Court that because it appeared that two of the schools in the League (Lutheran North and Lutheran South) had physical education programs and what the MSHSAA staff believed to be the original reasons for the exemption no longer existed, therefore, the staff had recommended to the MSHSAA Board of Control, inter alia, elimination of exemption. Counsel for MSHSAA concentrated his efforts on showing that MSHSAA staff was justifiably unaware of the change in circumstances, *1042 and that, therefore, MSHSAA should be permitted to eliminate the exemption itself without intervention of the Court. The interests of The ABC League were not adequately represented in the Barnhorst litigation.
25. After the court's decision in Barnhorst on April 8, 1981, MSHSAA distributed to its members a proposal to amend the MSHSAA constitution by repealing the Article VIII, Section 10 ABC League exemption. The deletion was based upon MSHSAA concern over the constitutionality of exemption in light of Barnhorst. Another reason for the proposal was the belief that the existence of physical education programs at Lutheran South and Lutheran North obviated the necessity for the exemption. Yet, there is no finding by the MSHSAA that the presence of physical education program at a school made it more likely that the school would recruit students or that school hopping would occur at that school or that The ABC League's philosophy toward sports as a vital component of the educational process had changed. By a two-thirds majority the schools that comprised the MSHSAA voted to delete the Section 10 ABC League exemption on April 30, 1981.
26. Andrew Nelson was not recruited by Burroughs and did not transfer there for athletic reasons. He has received no scholarships or financial aid to enter Burroughs. Plaintiff wants to compete during his first year at Burroughs in contests between ABC League members in football at the B level and wrestling and track at the A level.
27. Practicing or scrimmaging with a team, intramural athletics and physical education pale in comparison to the benefits to be received from interscholastic athletic competition. Moreover, it would be impractical for a coach to permit a player to scrimmage with a team yet not compete against other teams. Additionally, John Burroughs has no program of intramural sports. The Court finds that interscholastic athletic competition in The ABC League teaches the values of self-reliance, preparedness, endurance, teamwork, team spirit and sportsmanship. It is difficult to instill these values through other educational avenues.
28. The educational process of a child is irretrievably damaged when an important part of his education, in this case interscholastic sports, is taken away for an entire year.
29. MSHSAA's deletion of Section 10 from Article VIII of its constitution and its concomitant application to The ABC League of the transfer rule contained in § 8 have precluded The ABC League and its member schools from allowing transfer students to compete in intra-league competition at the A, B, and C levels during their first year and will effectively deprive plaintiff Nelson of the right to compete in intra-league football at the B level and wrestling and track at the A level during his first year at Burroughs. Nelson will also be deprived of the right to compete in these sports outside the league.
30. The Hardship Exception, Article VII, Section 10, contains no definite standards as to what constitutes "undue hardship" or "choice on the part of the student or parent", and the Board of Control has construed the rule in a contradictory and arbitrary manner.
31. Both The ABC League and MSHSAA are in complete accord about the need for a recruiting rule. MSHSAA's penalty for improper recruiting for athletic purposes is ineligibility for three hundred and sixty five (365) days. MSHSAA's transfer rule also renders a student ineligible for three hundred and sixty five (365) days. The transfer rule presumes a student has transferred for recruiting reasons. Once the "guilty" student has been registered for a year, he and his coach have been absolved for their indiscretion and the boy can play interscholastic sports. In other words, within one year the student undergoes a chameleon change from a "recruited" athlete to an "eligible" student.
32. The Court finds that the statutory residency requirements for eligibility to attend high school in a particular school district and each district's economic interest in *1043 enforcing the residence requirements both discourage improper recruiting in interscholastic sports. See § 167.021 (RSMo 1959) (misdemeanor in Missouri to fraudulently state residence). Furthermore, all schools monitor the recruiting behavior of their competitors. It follows that if competitors believe that an opponent has engaged in improper recruiting, they can penalize the school by expelling it from their conference or not scheduling games with it. The Court takes judicial notice that the governing bodies of college athletics police improper recruiting vigorously, and impose heavy fines and penalties on institutions found guilty of improper recruiting practices. MSHSAA gave no reason or indication at trial why it is presumably incapable of enforcing, along with the assistance of its member schools, the recruiting rule found in the MSHSAA constitution Article VII, Section 6. Apparently, MSHSAA has decided at the expense of the student athlete, to rely upon the transfer rule to combat the evils of both school hopping and improper recruiting.
33. There was no specific testimony or statistics offered concerning the number of school hopping cases that have come to the attention of MSHSAA. In fact, testimony of MSHSAA's own witnesses would indicate that cases of school hopping are extremely rare. It would appear that the admission standards and procedure of private college preparatory schools such as members of The ABC League and the rather high tuition fees which they charge, effectively screen out those who transferred for athletic purposes alone. Public school residence requirements and each school district's economic interest in enforcing those requirements would largely discourage school hopping between public schools.
34. MSHSAA has a balance of Five Hundred Thirteen Thousand One Hundred and Forty Seven Dollars ($513,147) including current assets of Two Hundred Forty Eight Thousand Three Hundred and Eighty Three Dollars ($248,383). Last year MSHSAA grossed One Million Thirty Three Thousand Four Hundred Ninety Three Dollars ($1,033,493) in cash receipts.
35. The Court finds that there are less restrictive and workable alternatives to the transfer rule. (1) MSHSAA could adopt a rule making transfers of students primarily for athletic reasons a ground for permanent as opposed to one year ineligibility; (2) MSHSAA could adopt a rule requiring a transfer student as a condition of eligibility to obtain a certificate from the principal of the school he is leaving and a certificate from the principal of the school to which he is transferring to the effect that the transfer is not primarily for athletic reasons; the Court takes judicial notice that California has undertaken such a procedure; (3) MSHSAA could exempt sub-varsity competition (for which there are no post-season play-offs from the transfer rule; (4) MSHSAA could also permit each conference to establish its own rules for transfer eligibility. Again, California has followed a plan similar to this; or (5) schools which field illegally recruited athletes could receive sanctions such as refusal to participate in state play-offs. The Court notes the above are just a few of the feasible alternatives to the transfer rule that come to mind which do not involve, as the present transfer rule does, an irrebuttable presumption that transferring students have transferred primarily for athletic reasons.
36. The Court finds that MSHSAA could individually adjudicate the occasional challenges to student eligibility in interscholastic athletics in the same manner that it adjudicates other challenges to students' eligibility. The expenses of such hearings, if too great to fund from MSHSAA ordinary income, could be assessed against the losing party. Other sources of income to fund these occasional challenges could come from nominal increases in each school's dues to the MSHSAA or through the imposition of money penalties on schools found guilty of recruiting violations. Best of all, MSHSAA could decentralize its operations by delegating procedures whereby conferences could police themselves as The ABC League has successfully done for over fifty (50) years.
*1044 37. Should The ABC League decide to allow transfer students to play in sports competition within or without the League, The ABC League and its member schools will be subject to suspension by MSHSAA for three hundred sixty five (365) days. See Article III, Section 3, MSHSAA constitution. Under Article XII, Section 1 of the MSHSAA constitution, no member school of the MSHSAA can compete in any interscholastic competition with a suspended school. Consequently, the penalty The ABC League and its member schools must suffer for the pursuit of the League's policy of universal athletic participation in League contests will be the denial of all competition between ABC League teams and teams of other schools.

Conclusions of Law

Plaintiff's Standing to Assert This Cause of Action
1. The ABC League, an unincorporated association, has the capacity to assert the constitutional rights of its members, their students, and the students' parents. NAACP v. The State of Alabama, 357 U.S. 449, 458-589, 78 S.Ct. 1163, 1169-70, 2 L.Ed.2d 1488 (1958); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). The ABC League cannot forfeit or voluntarily waive its members' rights to the substantive and procedural protections of the United States Constitution. Thomas v. Review Board of the Indians Employment Security Division, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); Sherbert v. Verner, 374 U.S. 398, 405, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963); L. H. Tribe, Constitutional Law, 510 (1978), for a governmental entity may not condition the receipt of its benefits upon the non-assertion of constitutional rights even though the receipt of such rights is in all other respects a mere privilege.
The ABC League has standing to bring this lawsuit. The Supreme Court's two prong test for the judiciary's prudential concept of standing requires the plaintiff to allege that the challenged action has caused him injury in fact and the interest he seeks to have protected is arguably within the zone of interest sought to be protected or regulated by the statute or constitutional guarantee in question. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152-53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); See Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The ABC League will suffer a cognizable injury should the MSHSAA transfer rule be upheld by this Court. The injury the League will suffer includes suspension for three hundred and sixty five (365) days from the MSHSAA and the denial of all athletic competition with other ABC League teams and teams of other schools. (FF 37). The interest sought to be protected, the equal treatment of similarly situated persons (student-athletes), is obviously within the zone of interests protected by the Fourteenth Amendment of the United States Constitution.
As Judge Clark recognized in Barnhorst, supra, 504 F.Supp. at 457-58, the issue of whether the MSHSAA's enforcement of the transfer rule violates the Fourteenth Amendment is a substantial federal question. See also Brenden v. Independent School District 742, 477 F.2d 1292, 1297 (8th Cir. 1973). Plaintiff Nelson's interest in participating in interscholastic sports is substantial and significant. Brenden, supra, at 1299. This Court also agrees with Judge Clark that MSHSAA enforcement of the transfer rule and repeal of The ABC League exemption is state action. Barnhorst, supra, 504 F.Supp. at 456-58; accord State ex rel. Missouri State High School Activities Association, 507 S.W.2d 354, 355 (Mo. en banc 1974); Art Gaines Baseball Camp, Inc. v. Houston, 500 S.W.2d 735, 736 (Mo.App.1973). MSHSAA counterparts in other states have been deemed state actors. See Walsh v. Louisiana High School Athletic Association, 616 F.2d 152, 156 (5th Cir. 1980); Morris v. Michigan State Board of Education, 472 F.2d 1207, 1209 (6th Cir. 1973).

*1045 The Barnhorst Cases Decided in the United States District Court, Western District of Missouri are not res judicata and thus do not bar the bringing of the present lawsuit.

2. The Court in Barnhorst v. MSHSAA, 504 F.2d 449 (W.D.Mo.1980) (hereinafter Barnhorst I) decided that Section 8, Article VIII of the MSHSAA Constitution (transfer rule) did not violate the Equal Protection Clause. The plaintiff in that action was a minor, who resided in Kansas City. After transferring from one private school to another private school, plaintiff Barnhorst had desired to compete in interscholastic sports. MSHSAA argues that Barnhorst I bars, under the doctrine of res judicata, The ABC League from challenging Article VIII, Section 8 of the MSHSAA Constitution as repugnant to the Equal Protection Clause. Defendant similarly argues that the Court's decision in Barnhorst v. Missouri State High School Activities, et al., No. 80-1036 CV-W-4-3 (April 8, 1981) (hereinafter Barnhorst II) to invalidate The ABC League exemption (Article VIII Section 10 MSHSAA Constitution) forecloses any attempt by The ABC League to have The ABC League exemption revived.
Res judicata,[2] a doctrine of judicial origin, makes a final, valid judgment conclusive as to the parties, and those in privity with them, as to all matters of fact and law, that were or should have been adjudicated in the proceedings. 1(b) Moore's Federal Practice ¶ .405(1) at 624 (1980); see Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947). One who was not a party of record may nevertheless be bound by the prior judgment if he has sufficient interest in the suit and participated and controlled the litigation. A sufficient interest may be found when the party possesses a legal right, interest or duty dependent wholly or in part on the cause of action before the Court. See Montana v. U.S., 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). A non-party who has participated also will be bound when he has an interest in a proprietary right which will be affected adversely or favorably by the Court's decision in litigation. Moore, supra, ¶ .411(6) at 1558. Finally, res judicata will operate to bar a subsequent suit by a participating party who shared an interest in the determination of a question of fact or of a mixed question of fact and law with reference to the same subject matter or transaction of the original suit. Bigelow v. Old Dominion Copper, Mining and Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912). It should be noted that to be a "participant" the non-party must usually have executed control, or at least joint control, of the prosecution or defense of the suit. Rumford Chemical Works v. Hygenic Chemical Co., 215 U.S. 156, 160, 30 S.Ct. 45, 46, 54 L.Ed. 137 (1909); American Safety Flight Systems v. Garrett Corp., 528 F.2d 288 (9th Cir. 1979).
The Court is of the opinion that The ABC League is not barred from litigating either the transfer rule or The ABC League exemption. In Barnhorst I, Judge Clark decided the constitutionality of the transfer rule, however, The ABC League was not a participating party in Barnhorst I. Nor did The ABC League have any similar interest, at that time,[3] with plaintiff in Barnhorst I. With respect to Barnhorst II, The ABC League was permitted to intervene, but this intervention came well after the court had decided The ABC League exemption was unconstitutional. Furthermore, the MSHSAA (defendant in Barnhorst II) never adequately argued the historical justification for the exemption, indeed, the MSHSAA abandoned any defense of the rule midway through trial. This Court cannot say that The ABC League had, at the least, joint control of the Barnhorst II litigation. For these reasons *1046 this Court is constrained to conclude that The ABC League was not a "party" or in privity with a party in either Barnhorst I or Barnhorst II and, therefore, The ABC League is not barred from litigating the constitutionality of the transfer rule or The ABC League exemption.
Even if The ABC League is deemed to have been a participant in the Barnhorst litigation, the court in Barnhorst II was without jurisdiction because its decision was not the product of a contested hearing. U.S. v. Johnson, 319 U.S. 302, 304, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413 (1943). (lawsuit is uncontested in the absence of a genuine adversary issue between the parties); L. H. Tribe, Constitutional Law 69 (1978). The MSHSAA made no effort at trial to demonstrate the present justification for The ABC League exemption. In fact, the MSHSAA urged the court to refrain from deciding the matter and instead allow the MSHSAA to eliminate the exemption.[4] There was no genuine adversary relationship in Barnhorst II, thus there was no "case or controversy" within the meaning of Article III of the United States Constitution existed and the court was without jurisdiction to decide the issue. Restatement of Judgments, ¶ 93.
The Court likewise concludes that plaintiff Andrew T. Nelson was not barred from bringing the present action for reasons explained above and for the reason that Nelson was not a participating party in the Barnhorst litigation.

The Applicable Standard of Review is the Rational Basis Test
3. Plaintiff argues that defendant MSHSAA, by eliminating The ABC League exemption and applying the transfer rule to the League, has unconstitutionally restricted The ABC League program of interscholastic athletics. The ABC League contends that the League's athletic program, which is central to the educational program of an association of private schools, is entitled to the protection accorded the fundamental rights of private education and free association. See NAACP v. Alabama, supra, Pierce v. Society of Sisters, supra, Meyer v. State of Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Moreover, plaintiff maintains that because fundamental rights are involved the MSHSAA may not use the transfer rule to restrict the League's program except to meet a compelling state purpose that cannot be satisfied by a more narrowly drawn regulation.
Plaintiff cited a number of cases to support the proposition that a private education of one's choice is a fundamental right; but plaintiffs principally rely on Meyer, supra, and Pierce, supra. While these cases do emphasize the vital importance of choice of both the parents and children in the area of education, they do not go so far as to hold that education is a fundamental right implicitly guaranteed by the Constitution which will require application of the strict scrutiny test whenever a classification is challenged as a deprivation of due process or denial of equal protection. See San Antonio Independent School District v. Rodriques, 411 U.S. 1, 33-40, 93 S.Ct. 1278, 1296-1300, 36 L.Ed.2d 16 (1973). (The Supreme Court explicitly refused to find that education was a fundamental right). While this Court is sympathetic with plaintiff's position, I am unwilling to accept an invitation to create a fundamental right of education where the Supreme Court has declined the same offer.
Plaintiff's fundamental right of association, which is implicit in the First Amendment and made applicable to the states through the Fourteenth Amendment, is not impinged by interscholastic eligibility rules. City of Moreland v. Western Pennsylvania Interscholastic League, 572 F.2d 121, 123-24 (3rd Cir. 1978); Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir. 1970). Plaintiff's membership in the MSHSAA is voluntary and some regulation of interscholastic sports is proper to insure a uniform program of Missouri interscholastic sports. See Walsh, supra.
Since fundamental rights are not implicated by the MSHSAA elimination *1047 of The ABC League exemption and the concomitant application of the transfer rule, the Court will employ a rational basis test to decide the constitutionality of the challenged MSHSAA action under the due process clause. Parham v. Hughes, 441 U.S. 347, 350-53, 99 S.Ct. 1742, 1745-46, 60 L.Ed.2d 269 (1979). Under the rational basis test, legislative action which bears some rational basis to a legitimate state purpose will be undisturbed by the courts. San Antonio, supra, 411 U.S. at 1-44, 93 S.Ct. 1278-1302, 36 L.Ed.2d 16. A quasi-legislative body such as the MSHSAA is presumed to have acted within its constitutional power. Walsh, supra. Arbitrary impositions and capricious, purposeless restraints by government will not withstand scrutiny under the rational basis test. Moore v. the City of East Cleveland, Ohio, 431 U.S. 494, 503-504, 97 S.Ct. 1932, 1937-1938, 52 L.Ed.2d 531 (1977); Poe v. Ullman, 367 U.S. 497 at 539-43, 81 S.Ct. 1752 at 1774-76, 6 L.Ed.2d 989 (1961) (Harlan, J. dissenting).

Unconstitutionality of the MSHSAA's Repeal of The ABC League Exemption.
4. The propriety of The ABC League exemption which excluded football from its scope was never questioned by the MSHSAA board or member schools until it was recently repealed in May, 1981. (FF 22). The ABC exemption had made it possible for The ABC League schools to implement their unique educational philosophy which placed a premium on universal participation in interscholastic sports as a part of the school's over-all educational program (FF 15, 17, and 19). Interconference ABC League games did not give The ABC League any advantage over MSHSAA schools; nor did or could the exemption promote school hopping to ABC League schools. (FF 13, 14, 16, 20). The MSHSAA did not take these facts into account when it recommended repeal of the exemption. The Court concludes that repeal of The ABC League exemption was arbitrary and capricious and was in no way related to the regulation of recruiting abuses in Missouri interscholastic sports activities.
The ABC League exemption does not violate the Equal Protection Clause of the Fourteenth Amendment. The exemption does produce two classes  those ABC League transfer students who may immediately participate only in ABC League interconference sports activities but not contests with other MSHSAA schools, and non-ABC League students who by virtue of the transfer rule are ineligible to compete in MSHSAA sports for an entire year. However, the exemption and the creation of the two named classes is justified by the actual purposes of the MSHSAA Constitution. One, the MSHSAA was designed to permit a conference formed by private schools to regulate interconference sports competition where the unique philosophy of education and the policies of private and religious schools forming the conference made recruiting abuses highly unlikely. Indeed, the fifty year record of the private and religious schools forming the conference (ABC League) was free from recruiting abuses. Two, intra-conference competition among member schools of The ABC League in no way affected regular season competition between ABC League schools and other member schools of MSHSAA or playoff or state championship competition sponsored by MSHSAA. Additionally, ABC League schools demonstrated that, among other things, their admission standards and inter-school monitoring programs adequately address the prevention of recruiting abuses which is the concern behind the MSHSAA transfer rule. The challenged ABC exemption, therefore, must be sustained under equal protection analysis as rationally related to a legitimate government interest. See U.S. Dept. of Agriculture v. Moreno, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973).

Unconstitutionality of the MSHSAA Transfer Rule
5. The Equal Protection clause demands that "No State shall ... deny equal protection of the laws." U.S.Const.Amend. XIV, § 1: The rights infringed in this litigation are not fundamental rights, thus the equal protection analysis appropriate for analyzing the classification created by the MSHSAA transfer rule is the rational basis *1048 test. See supra, § 2; New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). The transfer rule creates two classes: Those who do not transfer from one school to another as opposed to those who transfer. The rule's purpose is to discourage recruitment of high school athletes which is a legitimate state purpose. In practical effect, the transfer rule does not work to rationally deter recruitment. The rule employs an irrebuttable presumption that one who transfers from one school to another does so for the purposes of school hopping. The capriciousness of the rule cannot be overcome even when the vague and amorphous MSHSAA hardship rule is considered. The transfer rule is overinclusive for the inclusion of athletes, like plaintiff Andrew T. Nelson, who have transferred for legitimate purposes does not further the purpose behind the transfer rule. McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 287, 13 L.Ed.2d 222 (1964); Sullivan v. University Interscholastic League, 616 S.W.2d 170 (Tex.1981). Equal protection analysis requires that some attempt be made to include all those similarly situated with respect to purpose. Rinaldi v. Yeager, 384 U.S. 305, 306, 86 S.Ct. 1497, 1498, 16 L.Ed.2d 577 (1966); see Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).
The transfer rule results in a gross mathematical discrepancy and extreme inequality in the classes it produces. The transfer rule cannot be said to deter recruiting abuses. Moreover, there is no reason why the MSHSAA cannot simply employ the extant recruiting rule rather than the transfer rule to curb any recruiting abuses. All MSHSAA schools have the means and economic interest to regulate school hopping. (FF 32, 35) The MSHSAA itself has the funds and mechanism to adjudicate the occasional challenges to student eligibility in interscholastic sports and should not be allowed to rest its regulation of interscholastic sports activities on the overinclusive and unreasonable transfer rule. See e.g. (FF 9 34-35). MSHSAA reliance upon the transfer rule places administrative ease and overregulation ahead of the legitimate interests of the students the MSHSAA was created to benefit. The Court holds that the MSHSAA transfer rule violates the Equal Protection Clause of the United States Constitution, and plaintiff Nelson and The ABC League are entitled to the injunctive and declaratory relief sought.

Remedy
6. The Court concludes that the plaintiff should have the benefit of an injunction prohibiting the further enforcement by the MSHSAA of its repeal of The ABC League exemption.
The Court further concludes that even with the invalidation of the MSHSAA repeal of The ABC League exemption, plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 holding the transfer rule Article VIII, § 8 of the MSHSAA Constitution, as presently written, unconstitutional under the Equal Protection Clause of the United States Constitution.
NOTES
[1] The ABC League exemption, previously codified in Article VIII Section 10 of the MSHSAA constitution, provided:

The ABC League ... shall not be governed by the eligibility rules of Articles VII and VIII in competition with private schools, except that which has an effect on ratings for state football playoffs. It shall be governed by the standards under Article VII & VIII in all competition with other MSHSAA schools.
[2] Res judicata differs from collateral estoppel in that the former doctrine requires an identity of causes of action.
[3] The ABC League had little interest in the transfer rule because the League was exempt from that rule's provisions with respect to intra-ABC League games, and the existence of the recruiting rule remained as a bar to recruiting abuses.
[4] The MSHSAA subsequently did eliminate The ABC League exemption.