837 F.Supp. 998 (1993)
Sean BECK, by his parent and next friend Marlene BECK, Plaintiff,
v.
MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, Defendant.
No. 4:93CV1598-DJS.
United States District Court, E.D. Missouri, E.D.
November 15, 1993.
*999 Daniel K. Barklage, Barklage and Barklage, St. Charles, MO, for plaintiff.
J. Robert Tull, Columbia, MO, for defendant.

ORDER
STOHR, District Judge.
On July 12, 1993, plaintiff instituted this action for injunctive and declaratory relief pursuant to the First and Fourteenth Amendments of the United States Constitution and 28 U.S.C. § 2201. Plaintiff asks the Court to consider the constitutionality of § 238.3 of the Bylaws of the Missouri State High School Activities Association ("MSHSAA" or "Association"). That particular bylaw restricts a student's eligibility to participate in interscholastic athletic activities for a period of 365 days following the student's transfer from one school to another. This provision contains nine (9) exceptions, *1000 one of which is the basis of this suit. Specifically, plaintiff challenges the exception contained in § 238.3(a)(2), which affords students transferring from a non-public to a public school eligibility for interscholastic competition within five (5) days of transfer, as opposed to the 365 day waiting period imposed on students such as plaintiff who transfer from a public school to non-public school.
Plaintiff alleges that because of the inclusion of this particular provision, the entire transfer restriction bylaw violates his Equal Protection and Due Process rights under the Fourteenth Amendment, as well as his First Amendment rights of Freedom of Religion and Association, by depriving him of eligibility to participate in interscholastic basketball competition as a consequence of his transfer from a public school to a parochial school.
In response, defendant filed a motion to dismiss for lack of jurisdiction or for failure to state a claim upon which relief could be granted. Because plaintiff's first basketball game is scheduled for November 22 or 23, 1993, time has become an important consideration, and on October 8, 1993, plaintiff filed a motion for a preliminary injunction and declaratory judgment, pursuant to Fed. R.Civ.P. 65(b). Plaintiff seeks to forbid defendant from enforcing the transfer rule until the conclusion of a hearing on the merits. The Court ordered the preliminary injunction motion consolidated with trial on the merits, pursuant to Fed.R.Civ.P. 65(a)(2) and heard arguments on October 25, 1993. After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes the following findings of fact and conclusions of law.

I. FINDINGS OF FACT
1. Plaintiff Sean Beck is a minor, sixteen years of age, who resides with his parents in St. Charles, Missouri and currently attends Lutheran High School ("Lutheran") in St. Peters, Missouri.
2. Plaintiff transferred to Lutheran, a private parochial school, from Francis Howell North High School ("Francis Howell"), a public school, on January 25, 1993.
3. Defendant MSHSAA is a voluntary, non-incorporated association of private and public junior and senior high schools.
4. Both Francis Howell and Lutheran are members of MSHSAA, and both field teams in various sports that compete with teams of other member schools.
5. MSHSAA is an activities association established by junior and senior high schools for the purpose of adopting uniform standards to regulate interscholastic activities and contests among member schools. Activities encompassed by MSHSAA include athletics, speech and debate, music, and cheerleading.
6. Two fundamental objectives of the Association are to "prevent exploitation of high school youth and the programs of member schools by special interest groups" and "to ensure greater statewide consistency and quality." MSHSAA Constitution, Article II, § 3(f) & (i).
7. MSHSAA consists of approximately 730 senior and junior high schools, 63 of which are non-public schools. The governing structure of the Association is essentially democratic in nature. Member schools collectively exercise legislative authority to adopt, amend or repeal constitutional provisions and bylaws, and judicial authority is vested in an eight-member Board of Control "to interpret the rules and provisions of the Constitution and By-Laws of the Association and ... be the final judge as to whether a violation has occurred." MSHSAA Constitution, Article IV, § 6(g).
8. The eight individuals on the Board represent eight geographical districts within the State of Missouri and are selected by schools within each of the districts; each of the individuals is either a principal or a superintendent of a public school in his or her respective district. Local school boards have input into the formulation and enforcement of MSHSAA policies and rules through their district representatives.
9. Section 238.3(a)(2) of the MSHSAA bylaws specifically provides:
TRANSFER FROM NONPUBLIC TO PUBLICIf a student transfers from a *1001 nonpublic school to a public school located in the district where the student's parents reside, he/she may be eligible as soon as certified in accordance with By-law 234 provided the student is transferring to the public school for the first time and the principals of both the public and nonpublic schools involved concur that undue influence is not involved in the transfer.
However, the bylaws lack a similar provision covering transfers from a public school to a non-public school.
10. Bylaw 238.3(a)(9) contains a waiver which confers limited eligibility upon a student who transfers schools under circumstances which would otherwise make him ineligible to participate in interscholastic athletics at his or her new school for 365 days. The student is eligible under the following terms: "A student whose name has been included on a school eligibility roster at any level for a given sport during the twelve (12) calendar months preceding the date of such transfer can be eligible only for sub-varsity competition in that sport. A student may have unrestricted eligibility in all other sports...."
11. Any transferring student is permitted to practice with teams at any level, in any sport, regardless of his involvement with that sport at his or her prior school.
12. During the 1992-93 school year, while in the tenth grade, plaintiff transferred from Francis Howell to Lutheran. While at Francis Howell, plaintiff participated on the junior-varsity basketball team.
13. Participation in interscholastic athletics was not an impetus to plaintiffs decision to transfer, nor did it play any part in the decision. Neither plaintiff nor his parents were ever "recruited," solicited, or influenced by any official, teacher, or other person affiliated with Lutheran in connection with the decision to transfer.
14. Plaintiff's decision to transfer from Francis Howell to Lutheran was made after consultation with his parents, and was based on their belief that Lutheran offered plaintiff smaller classes, a better educational experience, and improved prospects of attending an outstanding university.
15. At the time the transfer decision was made, plaintiff and his parents were aware that Lutheran was a member of MSHSAA and that one of MSHSAA's rules generally prohibited a transfer student from participating in interscholastic athletic competition for a period of 365 days from the time of transfer.
16. Subsequent to plaintiff's enrollment at Lutheran, he inquired about participation in the school's varsity basketball program. The school advised plaintiff that he would not be eligible to compete in interscholastic competitions between member schools until approximately January 25, 1994.
17. After learning that he would be ineligible to compete on Lutheran's basketball team, plaintiff requested that Larry Marty, the principal of Lutheran, contact Becky Oakes, Executive Director of MSHSAA, to request that the MSHSAA Board of Directors grant plaintiff unrestricted eligibility in varsity basketball for the 1993-94 school year. The MSHSAA Appeals Committee met and considered plaintiff's request for unrestricted eligibility. The Committee granted his appeal under § 238.3(a)(9), allowing him to play non-varsity basketball during the 365 days following his transfer. However, plaintiff remains ineligible for varsity basketball until January 25, 1994.
18. Plaintiff also sought unrestricted eligibility in all sports pursuant to § 238.3(a)(8), the "hardship" waiver. However, the Appeals Committee denied his request because plaintiff's situation fell outside the criteria for a "hardship exception." The MSHSAA Board of Directors affirmed the Appeals Committee decision, concluding that plaintiff's transfer was a matter of "choice" and not a true "hardship," as defined by the bylaws. It is uncontested that plaintiff exhausted his administrative remedies under MSHSAA's constitution and bylaws.
19. Jack Miles, a former MSHSAA Executive Director, testified that the transfer rule, as well as its various exceptions, have been modified by the member schools on numerous occasions. The current modification was an attempt to deal with the alleged advantage that non-public schools have over *1002 public schools. However, there is no consensus among MSHSAA officials or the member schools as to whether this advantage is a real or a perceived advantage.
20. MSHSAA relies on the transfer rule to combat the evils associated with "school-hopping" and improper recruiting. However, defendants failed to demonstrate the existence, much less the prevalence, of either such evil.
21. There are no allegations of recruiting, "school-hopping" or undue influence in this case, and it is unlikely that plaintiff's participation on Lutheran's basketball team, if permitted, would afford that team any significant advantage over other teams, as plaintiff labels himself an "average player."
22. Under the Association's constitution, if a member school believes any of MSHSAA's constitutional provisions or bylaws should be reviewed or abrogated, it may initiate a petition to bring the matter before the membership. A petition for an amendment must be signed by the administrative officer of at least ten percent (10%) of the member schools who participate in the activity (or activities) to which the amendment is directed. A duly signed petition is first presented to the executive secretary who circulates the proposal by mail to all the member schools. Those schools then vote on the proposed amendment by mail. The proposal must receive a two-thirds majority vote to become effective.
23. Some member schools and others active in high school athletics orally expressed their concerns about the fairness and effectiveness of § 238.3(a)(2), the exception governing non-public to public school transfers. However, there were no organized efforts to bring the bylaw before the entire membership.

II. CONCLUSIONS OF LAW

1. This Court Has Jurisdiction Over This Action Pursuant To 28 U.S.C. §§ 1331 and 1343(a)(3), and The Complaint States A Claim Upon Which Relief Can Be Granted.

Plaintiff properly invokes this Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331, citing the existence of a constitutional question. In addition, the Court notes that although MSHSAA is essentially a private party, its contacts and relationship with the public schools of the State of Missouri and the State itself are sufficient to transmute MSHSAA's challenged rule into a "state action," subject to the constitutional strictures of the Fourteenth Amendment, pursuant to 28 U.S.C. § 1343(a)(3). See, e.g., Barnhorst v. Missouri State High School Activities Ass'n, 504 F.Supp. 449, 456-57 (W.D.Mo.1980). Therefore, to the extent defendant moves the Court to dismiss this action, alleging a lack of jurisdiction, defendant's motion fails.
In addition, the Court does not find the claim alleged in plaintiff's complaint to be frivolous or insubstantial on its face. The Eighth Circuit has expressly rejected the argument that eligibility rules governing participation in interscholastic activities cannot be subject to the Equal Protection requirements of the Fourteenth Amendment. See Brenden v. Independent School District 742, 477 F.2d 1292, 1297 (8th Cir.1973). "[A]t the very least, the plaintiffs interest in participating in interscholastic sports is a substantial and cognizable one ... [and the] case [is] properly before a federal court to determine if the High School League's actions [were] in conformity with the Equal Protection Clause." Id. at 1299. Therefore, to the extent defendant moves to dismiss this complaint on the grounds that it fails to advance a claim for which relief can be granted, defendant's motion must fail.

2. The Transfer of Enrollment Standards Contained In § 238.3 Of MSHSAA's Bylaws Do Not Violate Plaintiff's Freedom of Religion or Freedom of Association Rights.

Plaintiff argues that he is "penalized" by the transfer restriction, which denies him eligibility to participate in interscholastic athletic competition for 365 days because he transferred from a public to a religious school. This "penalty" allegedly impairs his right to freely exercise his religious beliefs and to freely associate with those holding similar religious beliefs, both in violation of his First Amendment rights to Free Exercise of Religion and the right of his parents to *1003 direct the education of their child. For the reasons set forth below, the Court rejects both arguments.
The Free Exercise Clause prohibits government from punishing an individual on the basis of his or her religious beliefs. However, it does not prohibit the regulation of conduct engaged in for religious reasons, when the regulation is necessitated by reasons independent of the religious nature of the conduct. See, e.g., Church of the Lukumi Babalu Aye v. City of Hialeah, ___ U.S. ___, ___, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993) (acknowledging that a law might be upheld despite incidental effect of burdening a particular religious practice); Braunfeld v. Brown, 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961). The rule at issue makes no reference to religion and thus does not facially interfere with plaintiffs exercise of his religious beliefs.
However, even though the rule makes no attempt to segregate individuals based on their religious beliefs, "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." Wisconsin v. Yoder, 406 U.S. 205, 220, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15 (1972). Notably absent in this case though is any evidence that plaintiffs or his parents' ability to practice their religion has been burdened. There is no allegation of a "grave interference with important ... religious tenets, ... [or a suggestion that] it compels students to perform acts undeniably at odds with fundamental tenets of their religious beliefs," as required in Yoder. See id. 406 U.S. at 218, 92 S.Ct. at 1534. Because of the absence of any evidence regarding the impact of the restriction on plaintiff's or his parents' religious practice or beliefs, the Court finds no First Amendment deprivation. See, e.g., Griffin High School v. Illinois High School Ass'n, 822 F.2d 671, 674 (7th Cir.1987).
Plaintiff also alleges that his freedom of association rights are restricted. The freedom of association is not explicitly provided in the Constitution but rather is implied from other, explicitly provided, constitutional rights. In this case, plaintiff argues that his parents have a right to select the school he attends, and any burden on his parents' right impairs his implied right to freely associate with those sharing similar religious beliefs. Plaintiff's reliance on Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), as supporting his position is misplaced.[1] In Pierce, the Supreme Court held that states could not prevent students from attending non-public schools. Id. at 535. However, because the bylaw at issue does not impose such a restriction, Pierce is inapplicable. There is no evidence that temporarily restricting plaintiff's eligibility to compete in a basketball game restricts his ability to choose a particular school or to associate with whomever he chooses. The bylaw does not unduly interfere with the religious beliefs of plaintiff or his parents, or their ability to freely choose a school. Therefore, the Court finds no constitutional violation. See, e.g., In re U.S. ex rel Missouri State High School Activities Ass'n, 682 F.2d 147 (8th Cir.1982) [hereinafter In re MSHSAA]; Griffin High School v. Illinois High School Ass'n, 822 F.2d 671 (7th Cir. 1987).

3. By-Law 238.3 Is Not Over-Inclusive, Arbitrary Or Capricious.

Relying on ABC League v. Missouri State High School Activities Ass'n, 530 F.Supp. 1033, 1048 (E.D.Mo.1981) [hereinafter ABC League], plaintiff argues that the Transfer of Enrollment Standards provided in § 238.3 are over-inclusive because they impact many transfers which do not involve the harms that § 238.3 was adopted to prevent. The Eighth Circuit expressly rejected that argument in In re MSHSAA, 682 F.2d at 152, and accordingly, plaintiff's argument cannot succeed.
Plaintiff also attacks the "hardship exception," contained in § 238.3(a)(8), as being arbitrary and capricious. Again relying on ABC League, plaintiff alleges that the *1004 hardship exception is "vague and amorphous" because it lacks specific standards as to what constitutes a "hardship." The Eighth Circuit found that the prior version of the rule contained at least one definite standard that was sufficient to narrow the scope of the bylaw. "The exception can only be invoked in cases involving no choice by the student or his parents.... The [Board] has a very narrow ambit of discretion which is constitutionally acceptable." In re MSHSAA, 682 F.2d at 153. The current version of the transfer rule contains a similar limitation, because it can be invoked only if the transfer was for nonathletic reasons and there was no undue influence. Additionally, the current version of the rule replaces the "no choice" language of the prior version with a specific description of the circumstances which might give rise to a hardship exception.[2] The Court finds that the range of discretion afforded the Board is not contrary to constitutional strictures.

4. The Exception To MSHSAA's Transfer Rule Contained In § 238.3(a)(2) Violates The Equal Protection Clause

Finally, plaintiff attacks the constitutional validity of the entire Transfer of Enrollment Standards provision because of the inclusion of subsection (a)(2), which allegedly causes students transferring from public schools to non-public schools to be treated differently than students transferring from non-public schools to public schools. The Constitution requires heightened judicial scrutiny when a law classifies individuals so as to create a "suspect class," or when a constitutionally protected fundamental right is infringed. Plaintiff does not contend that the classification created by the rulestudents transferring from public to non-public schoolsis based upon "suspect" criteria. Thus, consistent with the Court's findings above, there is no unconstitutional deprivation in this case, and plaintiff is correct to frame his argument in terms of a rational basis analysis.
Under the transfer policy in effect before this dispute arose, students who transferred to or from MSHSAA member schools were subsequently ineligible for participation in interscholastic competition among member schools for a period of 365 days, unless their parents had actually changed residences from one school district to another. The alleged purpose of this policy was to prevent the recruitment of student athletes, and based on that purpose, the Eighth Circuit upheld that prior version of the transfer rule against constitutional challenges similar to those raised here. See In re MSHSAA, supra. However, that case contained a version of the transfer rule which "attaches a restriction to all transfers whether to private or public schools...." Id. at 153. Because the current version of § 238.3 is similar to the Transfer of Enrollment Standards upheld by the Eighth Circuit, with the primary difference being the addition of § 238.3(a)(2), the Court declines plaintiff's invitation to invalidate § 238.3 in its entirety. Rather the Court will extrapolate from the Eighth Circuit's opinion in evaluating only the addition to the Transfer Standards, § 238.3(a)(2).
In support of upholding the entire bylaw, defendant relies on Griffin High School v. Illinois High School Ass'n, alleging that the transfer restriction at issue in that case was identical to the rule at issue here. In Griffin, the Seventh Circuit upheld the transfer rule, which distinguished between transfers to public and private schools, against similar First Amendment, Due Process and Equal Protection challenges. However, in Griffin the Seventh Circuit relied, at least in part, on the findings of an ad hoc committee which concluded that in Illinois "private schools ... enjoy an unfair advantage." 822 F.2d at 673. The appellate court determined that adjusting for this "perceived inequity" was a legitimate *1005 purpose and that the transfer rule was rationally related to achieving that purpose.
The Court finds Griffin distinguishable and inapplicable because the case at bar lacks comparable evidence as to the existence of a "private school advantage." MSHSAA did convene an ad hoc committee to consider the alleged advantages enjoyed by private schools, as in Griffin, but at trial, the parties presented little evidence as to the findings of the ad hoc committee. In fact, the specific portion of the transfer rule at issue was drafted and enacted completely independent of the ad hoc committee.
In this case, Mr. Miles, a former MSHSAA Executive Director, provided the majority of the evidence as to the alleged private school advantage. He testified that public schools were disadvantaged because private schools could select students from an unlimited geographical area, whereas a public school may only enroll students from the school district in which a student's parents reside.[3] Mr. Miles also cited the "financial incentives" that private schools were able to offer to attract student athletes. Mr. Miles' testimony was similar to the evidence the Seventh Circuit considered in Griffin, where that court found that, "differences between public and private schools ..., in [the view of the ad hoc committee], rendered competition between the two groups of schools inequitable, despite the facial neutrality of the [Illinois High School Association] transfer policy." 822 F.2d at 673.
In this case, however, it is not evident to this Court how these "differences" provide non-public schools an advantage over public schools. Public schools are free to all who reside within the district area, so a scholarship or even partial financial assistance afforded non-public school students merely places the non-public schools on an equal plain as the public school. Defendants argue that public schools are limited to accepting students who live within their district, while non-public schools can enroll students from theoretically anywhere. Also, it would seem that the public schools have larger student populations from which to select their athletes. Regardless of the reality of these "differences," the Association and its ad hoc committee acknowledged at least their potential existence and in response, agreed to impose attendance areas on non-public schools. Neither party has claimed that this solution is inadequate or that the "problem" remains an issue.
Additionally, in contrast to Griffin, this Court concludes that the bylaw raises a potential equal protection problem. In Griffin, the Seventh Circuit concluded that the rule was facially neutral because it did not classify students based on their religion. 822 F.2d at 674. However, in this action, § 238(a)(2), on its face, causes similarly situated individuals to be treated differently. Nevertheless, this constitutional infirmity might not be fatal to the bylaw, if defendant can show that the regulation addresses a legitimate state purpose and is rationally related to serving that legitimate purpose.
As indicated above, the parties in this action have failed to present the Court with evidence that a problem of "school-hopping" or recruiting actually occurs in the school system. Rather, Mr. Miles admitted knowledge of only a few incidents of "school-hopping," upon which he did not elaborate. There was also testimony that recruiting is not a problem. This Court has searched in vain for an explanation of the "advantage" that non-public schools are afforded over public schools which might justify such an exception to the transfer restriction. While the Court acknowledges the existence of cases from other jurisdictions reaching different conclusions, based on the record created by the parties in this case, and the materials submitted in support of their respective positions, it is unclear that this bylaw protects a legitimate state interest being protected by this bylaw. That is not to say that it may not exist; however, based on the evidence adduced at trial, this Court finds an insufficient basis upon which to uphold the challenged provision.
*1006 It is without question that jurisdiction is proper in this Court, and to the extent that an equal protection violation exists, the Court's intervention was not only proper, but also necessary. However, consistent with In re MSHSAA, the Court's restructuring of MSHSAA by-laws probably reflects a policy decision "better left to legislative and administrative bodies." 682 F.2d at 152. The evidence clearly indicates that no one is confident whether the supposed advantage enjoyed by non-public schools is a real problem or merely a perceived problem. This uncertainty suggests that this case should have been resolved by other than judicial means. Both sides seem overly concerned with whether this particular young man plays in a basketball game during the next two months, without any regard to the more fundamental underlying concern, his education. Perhaps the resources of all those involved would have been better served by a non-judicial resolution.
Nevertheless, the parties have selected this arena to resolve their differences and the Court will oblige them. The Court will invalidate the only exception to the transfer rule, provided at § 238.3(a)(2), as being a violation of the equal protection clause. The remainder of the transfer rule remains intact, in a form similar to the rule upheld by the Eighth Circuit in Ex rel MSHSAA. Additionally, the Court finds no basis upon which to award either side their attorney's fees; therefore, each side will bear their own costs.
The Court's concern that all parties would have been better served by a non-judicial resolution of this matter is accentuated by the effect of the Court's action. The rule, as modified by the Court, precludes any young person who transfers schools from participating in an interscholastic athletic event for 365 days. This result is likely unwelcome to both sides, yet entirely proper because the plaintiff has specifically challenged the exception contained in § 238.3(a)(2). Perhaps in the future this type of issue can be resolved without judicial intervention.
Accordingly, for the foregoing reasons,
IT IS HEREBY ORDERED that defendant's motion to dismiss for lack of jurisdiction or for failure to state a claim is denied.
IT IS FURTHER ORDERED that plaintiffs motion for a preliminary injunction is denied as moot.
IT IS FURTHER ORDERED that Section 238.3(a)(2) of the Missouri State High School Activities Association By-Laws is invalidated, as of the date of this order, and the remaining provisions are to be enforced without regard to the prior existence of the exception invalidated herein.
IT IS FURTHER ORDERED that each party will bear its own costs.

JUDGMENT
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of plaintiff, and § 238.3(a)(2) of the Missouri State High School Activities Association By-Laws is invalidated, as of the date of this order.
NOTES
[1] Because the Court resolves the issue against the plaintiff, it is unnecessary to consider whether an alleged restriction on plaintiffs parents' right to select a school comprises a restriction on plaintiff's freedom of association.
[2] Section 238.3(a)(8), as it appears in the 1992-93 MSHSAA Handbook, provides:

HARDSHIP  The Board of Directors may grant a transfer student eligibility who does not meet the Transfer Standards when sufficient evidence is provided to show that it was necessary for the student to transfer because of unforeseen, unavoidable, or unusual circumstances, including, but not limited to, broken home conditions, death of parents or guardian, and abandonment, and provided the transfer was not for athletic reasons and there was no undue influence....
[3] This concern was addressed by member schools through the adoption of the Ad Hoc Committee recommendation that "attendance zones" be created to limit the area from which non-public schools can enroll students.