682 F.2d 147
 5 Ed. Law Rep. 383
 In re UNITED STATES ex rel. MISSOURI STATE HIGH SCHOOL
ACTIVITIES ASSOCIATION, a voluntary,
not-for-profit, unincorporated
association, Petitioner.
William A. ZANDER III, by his next friend Judith R. Champ, Appellee,
v.
MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, (MSHSAA),
Appellant.
Julie Ann BARNHORST, by her Parent and Legal Guardian,
Marcella Barnhorst, Appellee,
v.
MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, Appellant,
Sunset Hill School; H. John Stander.
Julie Ann BARNHORST, by her Parent and Legal Guardian,
Marcella Barnhorst, Appellee,
v.
MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION; Sunset
Hill School; H. John Stander.
Appeal of the ABC LEAGUE.
In re UNITED STATES ex rel. MISSOURI STATE HIGH SCHOOL
ACTIVITIES ASSOCIATION, a voluntary,
not-for-profit, unincorporated
association, Petitioner.
The ABC LEAGUE, a voluntary unincorporated association, and
Andrew T. Nelson, a minor, by his next friend, his
father, Richard T. Nelson, Appellees,
v.
MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, a
voluntary unincorporated association, Appellant.
 Nos. 81-1433, 81-1439, 81-1526, 81-1527, 81-1976 and 82-1132.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 8, 1982.
Decided April 22, 1982.
Rehearing and Rehearing En Banc in Nos. 81-1527 and 81-1132
Denied May 18,
1982.
 
 Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for plaintiff-appellee and intervenor-appellant, the ABC League, and plaintiffs-appellees, Andrew T. Nelson and Richard T. Nelson.
 J. Robert Tull, Mallory V. Mayse, Tull & Mayse, Columbia, Mo., for appellant.
 Before LAY, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 The basic question presented is whether a rule of the Missouri State High School Activities Association (MSHSAA) barring a student's participation in interscholastic athletics for a period of one year after the student transfers from one high school to another violates the federal Constitution. We hold that it does not.
 
 
 2
 Facts.
 
 
 3
 The Missouri State High School Activities Association is a voluntary, nonprofit, unincorporated association of high schools whose purpose is the regulation of interscholastic activities including sports, speech, debate, and music. MSHSAA is comprised primarily of public schools although many parochial and nonsectarian private schools are also members of the association.
 
 
 4
 The transfer rule applies only to athletics. Article VIII, section 8 of the MSHSAA constitution provides, "Students who transfer for reasons other than promotion are ineligible for 365 days." Section 8 creates a number of exceptions to this rule, most importantly, transfers accompanied by a corresponding change of residence of the student's parents and transfers ordered by the board of education or made necessary by school reorganization or closing.[1]
 
 
 5
 Prior to July 1, 1981, an exception was also provided for students attending schools in the ABC League.[2] The ABC League is an association of private schools in the St. Louis area containing four denominational and two nondenominational schools. The six schools schedule sports competition among themselves on three levels determined by grade, age, height, and weight of the athletes. Because several of the ABC League schools have no physical education program and require all their students to participate in interscholastic athletics and because the League had traditionally been self-regulating, the League was granted a partial exemption from the transfer rule. However, during the course of this litigation, MSHSAA repealed this exemption effective July 1, 1981.
 
 
 6
 Three actions are consolidated in this appeal. In Zander v. Missouri State High School Activities Association, No. 81-0369-C(1) (E.D.Mo. April 7, 1981), Chief Judge H. Kenneth Wangelin enjoined MSHSAA from preventing William A. Zander, III, from participating in interscholastic tennis competition during the spring of 1981 after Zander transferred to a Missouri high school from a school in Florida. The Association's appeal from this order (No. 81-1439) is consolidated with review of this court's grant of a stay pending appeal (No. 81-1433). Zander did not take any role in the appeal. The parties concede that his individual claim is moot.
 
 
 7
 In Barnhorst v. Missouri State High School Activities Association, 504 F.Supp. 449 (W.D.Mo.1980), Judge Russell G. Clark refused to issue a preliminary injunction barring application of the transfer rule to prevent Julie Ann Barnhorst from participating in athletics during the 1980-81 school year. The court held the rule did not violate the due process or equal protection clauses of the fourteenth amendment.
 
 
 8
 Barnhorst subsequently conducted additional discovery and amended her complaint to claim that the transfer rule as modified by the ABC League exemption deprived her of equal protection of the law (Barnhorst did not transfer to or from an ABC League school). The court held that the exemption created discrimination between students which had no rational basis and thus violated the equal protection clause. However, the court found that the proper remedy was not the invalidation of the transfer rule, but rather the striking of the exemption. The court held the exemption unconstitutional and enjoined its application. Barnhorst v. Missouri State High School Activities Association, No. 80-1036-CV-W-4-3 (W.D.Mo. April 8, 1981). MSHSAA appealed (No. 81-1526).
 
 
 9
 On May 4, 1981, the ABC League moved to intervene in the Barnhorst case. The court allowed intervention for purposes of appeal, but refused to reconsider its order. Barnhorst v. Missouri State High School Activities Association, No. 80-1036-CV-W-4-3 (W.D.Mo. May 7, 1981). The League appealed (No. 81-1527). Because of the subsequent repeal of the ABC exemption,[3] the court's ruling as to the constitutionality of the exemption is moot. Barnhorst did not participate in the appeal. The parties concede that her individual claim is moot.
 
 
 10
 The final case consolidated in this appeal is ABC League v. Missouri State High School Activities Association, 530 F.Supp. 1033 (E.D.Mo.1981). In this case, the ABC League and Andrew T. Nelson, a transferee to an ABC League school interested in participating in interscholastic sports throughout the 1981-82 school year, filed suit against MSHSAA alleging that repeal of the ABC exemption and the transfer rule itself were unconstitutional. Judge Wangelin enjoined enforcement of the repeal and declared the transfer rule unconstitutional. In order to maintain a uniform policy in relation to the stay earlier granted in Zander, this court stayed execution of the ABC League order pending appeal. MSHSAA's appeal of Judge Wangelin's order (No. 82-1132) is consolidated with review of this court's stay of the order pending appeal (No. 81-1976).[4]
 
 
 11
 Issues.
 
 
 12
 The issues presented on appeal concern the constitutionality of the transfer rule, the constitutionality of the application of the transfer rule to those schools formerly exempt under the ABC exemption, and the legality of the district court's decision to enjoin repeal of the ABC exemption.[5]
 
 
 13
 Transfer Rule.
 
 
 14
 The ABC League and the individual students challenge the transfer rule on both equal protection and due process grounds. Because MSHSAA is an association comprised primarily of public schools, its rules are state action governed by the fourteenth amendment. However, federal courts have uniformly upheld comparable rules governing transfers against challenges based on both the due process and equal protection clauses. See Walsh v. Louisiana High School Athletic Association, 616 F.2d 152, 159-61 (5th Cir. 1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); Moreland v. Western Pennsylvania Interscholastic Athletic League, 572 F.2d 121 (3d Cir. 1978); Hamilton v. Tennessee Secondary School Athletic Association, 552 F.2d 681 (6th Cir. 1976); Albach v. Odle, 531 F.2d 983 (10th Cir. 1976) (New Mexico); Oklahoma High School Athletic Association v. Bray, 321 F.2d 269 (10th Cir. 1963) (residency requirement); Kulovitz v. Illinois High School Association, 462 F.Supp. 875 (N.D.Ill.1978); Dallam v. Cumberland Valley School District, 391 F.Supp. 358 (M.D.Pa.1975); Paschal v. Perdue, 320 F.Supp. 1274 (S.D.Fla.1970).
 
 
 15
 Equal Protection.
 
 
 16
 Participation in interscholastic athletics is an important part of the educational process. Nonetheless, education has not been deemed a fundamental right under the fourteenth amendment requiring application of strict judicial scrutiny. San Antonio Independent School District v. Rodriquez, 411 U.S. 1, 29-39, 93 S.Ct. 1278, 1294-1300, 36 L.Ed.2d 16 (1973).
 
 
 17
 Plaintiffs argue that the transfer rule burdens their exercise of the fundamental right to travel interstate and restricts their freedom to associate. When a student alters his or her place of residence from one state to another without an accompanying change by his or her parents (as did Zander), the rule prohibits the student from participating in interscholastic athletics for one year. Classifications which penalize the exercise of the right to travel are subject to strict scrutiny. Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). But most cases which implicate the rule's sanction do not involve interstate travel and, those which do, implicate the sanction because they involve school transfers and not because they involve interstate travel. The rule's minimal impact on interstate travel does not require strict scrutiny.
 
 
 18
 Plaintiffs also argue the rule burdens the exercise of the right to freely associate by penalizing students' choice to change schools and thus to alter the body of people with which they associate. Students have no indefeasible right to associate through choice of school. Mandatory assignment to public schools based on place of residence or other factors is clearly permissible. The transfer rule does not prevent association through private schooling nor discriminate against such association. Thus no right is burdened and the rule is not thereby subject to strict scrutiny.
 
 
 19
 Finally, plaintiff ABC League argues the rule burdens students' and parents' exercise of their right to choose and devise a nonpublic education. As discussed below, the rule does not impinge on this limited right.
 
 
 20
 Plaintiffs challenge the transfer rule as being both under-inclusive and over-inclusive. The rule is claimed to be under-inclusive because it does not apply to nonathletic activities. Since athletes are not a suspect class and no fundamental right is impinged by applying the rule to athletics and not to other school activities, the standard of judicial scrutiny which should be applied is the rational relationship test. Dandridge v. Williams, 397 U.S. 471, 485-87, 90 S.Ct. 1153, 1161-1162, 25 L.Ed.2d 491 (1970); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). A rational basis clearly exists for believing that the danger of incurring the harms involved in transfers motivated by athletics and attempts to induce such transfers is greater than the danger of parallel harms in other areas.
 
 
 21
 The transfer rule is claimed to be over-inclusive because it reaches many transfers which do not involve the harms it is designed to prevent. The rule does not, however, create an inherently suspect classification. Thus, as indicated, the rule need only be rationally related to a legitimate state purpose. The clear purpose of the rule is to prevent the evils associated with recruiting of high school athletes and transfers motivated by athletics. School officials urge the administrative difficulties and political pressures encountered in determining on an individual basis which transfers involve the feared evils justify the rule's prophylactic nature. Weinberger v. Salfi, 422 U.S. 749, 784-85, 95 S.Ct. 2457, 2476, 45 L.Ed.2d 522 (1975). We must agree. As observed in Dandridge v. Williams, 397 U.S. at 485, 90 S.Ct. at 1161, "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " Once a rational relationship exists, and it exists here, judicial scrutiny must cease. Whether the rule is wise or creates undue individual hardship are policy decisions better left to legislative and administrative bodies. Schools themselves are by far the better agencies to devise rules and restrictions governing extracurricular activities.[6] Judicial intervention in school policy should always be reduced to a minimum.
 
 
 22
 Due Process.
 
 
 23
 Plaintiffs also argue the rule violates the due process clause. Our equal protection analysis reveals that the rule is not arbitrary.[7] The Association's bylaws, section 10.1, provide for notice and hearings before both the executive secretary and the Board of Control concerning eligibility determinations. The specified procedures combined with the availability of application under the hardship exception satisfy any procedural due process requirements.[8]
 
 
 24
 ABC League Exemption.
 
 
 25
 As noted above, the constitutionality of the ABC League exemption is no longer before this court. After repeal of the exemption, the League may only argue that the transfer rule cannot constitutionally be applied to students transferring to or between its schools. The League argues that individuals have a constitutional right-derived from the first and fourteenth amendments-to choose to educate their children in private schools and to devise the curriculum of those schools without state interference. See Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (establishment clause); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (due process); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (same). The fourteenth amendment prevents states from prohibiting attendance of nonpublic schools, but it does not preclude reasonable, nondiscriminatory regulation designed to advance legitimate, secular interests. Board of Education v. Allen, 392 U.S. 236, 245-47, 88 S.Ct. 1923, 1927-1928, 20 L.Ed.2d 1060 (1968); Pierce, 268 U.S. at 534, 45 S.Ct. at 573; Windsor Park Baptist Church v. Arkansas Activities Association, 658 F.2d 618, 621 (8th Cir. 1981).
 
 
 26
 The transfer rule is a reasonable and neutral regulation. It does not burden the choice of private education, but merely attaches a restriction to all transfers whether to private or public schools except those falling into a specified exception. The ABC League argues that participation in interscholastic sports is an integral element of its vision of private education. The League makes no claim that this philosophy is rooted in religious practices and thus its claim is not cognizable under Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15, nor can the League demonstrate that the rule represents a fundamental restriction of liberty as was the compulsion of public education in Pierce, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, and the ban of instruction in a foreign language involved in Meyer, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042. The League may constitutionally be required to choose between conforming to the transfer rule or foregoing athletic competition with the members of MSHSAA.[9] We find the rule may constitutionally be applied to students transferring to schools in the ABC League.[10]
 
 
 27
 Since we find no violation of the federal Constitution, all stay orders are dissolved (Nos. 81-1433 and 81-1976). We reverse the district court's decision in ABC League (No. 82-1132) with directions to enter judgment in favor of MSHSAA, and to vacate the orders in Nos. 81-1439, 81-1526, and 81-1527 with directions to the district courts to dismiss each of these cases for lack of jurisdiction since they are now moot.
 
 
 28
 It is so ordered.
 
 
 
 [1]
 A hardship exception is defined in article VII, section 10 providing:
 The Board of Control is authorized to grant eligibility to a student in a case that is beyond the control of a student or his (her) parents, which in the opinion of the Board involves undue hardship or an emergency and does not violate the intent of any of the standards of eligibility. Cases involving any choice on the part of the student or parents shall not be heard under this section.
 
 
 [2]
 The exception provided:
 The ABC League, consisting of St. Louis County Day School, John Burroughs School, The Principia, Lutheran High School North, Lutheran High School South, and the Priory School, shall not be governed by the eligibility rules of Articles VII and VIII in competition with private schools, except that which has an effect on ratings for state football playoffs. It shall be governed by the standards under Article VII and VIII in all competition with other MSHSAA schools.
 
 
 [3]
 During the pendency of Barnhorst, MSHSAA began to consider repeal of the ABC exemption. Prior to the decision in Barnhorst, the Association's Board of Control decided to submit the issue of repeal to the member schools. The schools voted to remove the exemption effective July 1, 1981
 
 
 [4]
 This court also requested that the district court stay the implementation of any further orders concerning these issues in other cases, pending resolution of this appeal
 
 
 [5]
 Various parties raise procedural issues relevant to review of the decisions in Zander and Barnhorst. Because we consider the individual claims raised in these two cases to be moot and because repeal of the ABC exemption likewise made the ABC League's appeal of the Barnhorst decision moot, we need not discuss these issues
 
 
 [6]
 The Missouri Court of Appeals' eloquent statement in a 1973 dispute over MSHSAA's summer camp rule is strong evidence that the Missouri state courts adhere to the same view. The court in Art Gaines Baseball Camp, Inc. v. Houston, 500 S.W.2d 735, 740-41 (Mo.App.1973) (footnotes omitted) stated:
 Along with entrusting the education of our children to teachers and administrators, we also entrust the control and supervision of the extracurricular activities incident to that education. Implicit in the responsibility for these activities is the power to make reasonable rules and regulations. We are dealing here with numerous schools who have voluntarily joined an association. As members of this association, they may, by majority vote, enact rules to govern their interaction. It is obvious that chaos would result without such rules. It is also obvious that the members are in the most advantageous position to appreciate the regulations under which they must act to achieve desired goals. A court should not interfere with the enactment of those regulations as long as they are reasonable and do not infringe on public policy or law.
 
 
 [7]
 Plaintiffs also urge the promotion and hardship exceptions are arbitrary. Article VIII, section 7 of the MSHSAA constitution provides:
 a. A student promoted from the sixth grade to the seventh grade may be eligible immediately at the school of his or her choice.
 b. A student promoted from the eighth grade, or the highest grade of a junior high school administered as a unit within the school system, may be eligible immediately at the school of his or her choice.
 c. Students completing the highest grade in an elementary school that is not a part of a system supporting a high school may be eligible immediately in the school of their choice. Any succeeding transfer of enrollment shall be governed by the transfer of enrollment standards.
 The promotion exception recognizes that schools divide grades into different groups and evinces a reasoned judgment that transfers after completion of one of these units (e.g., junior high, whether a particular school defines it to include ninth grade or not) are more often unrelated to athletics than mid-unit transfers and that all transfers are less harmful between units. See Barnhorst, 504 F.Supp. at 462-63.
 Plaintiffs also attack the hardship exception, see note 1 supra, as arbitrary. However, the exception does contain one clear standard which greatly narrows its scope. The exception can only be invoked in cases involving no choice by the student or his or her parents (thus it could not have been invoked in any of the individual cases involved in this appeal). The Board of Control has a very narrow ambit of discretion which is constitutionally acceptable.
 
 
 [8]
 In Walsh, the Fifth Circuit held:
 The due process clause of the fourteenth amendment extends constitutional protection to those fundamental aspects of life, liberty, and property that rise to the level of a "legitimate claim of entitlement" but does not protect lesser interests or "mere expectations." ... A student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement. As decided in Mitchell, (v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir. 1970).), it falls "outside the protection of due process."
 616 F.2d at 159-60.
 
 
 [9]
 The ABC schools are voluntary members of MSHSAA and agreed in their individual membership applications to uphold the standards of the Association. See MSHSAA constitution at III, § 1
 
 
 [10]
 MSHSAA argues that Judge Wangelin's order in ABC League enjoining implementation of the repeal of the exemption constituted an abuse of the court's equitable powers and a usurpation of legislative authority. Because we find the transfer rule may be applied to all schools, including those in the ABC League, we need not review this claim