Barbara SOMMER, et al., Plaintiffs,

v.

Edwin H. BIHR, et al., Defendants.

No. 84–4331–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

April 2, 1986.

---

Roger Brown, Pamela Quigg, Bushmann, Neff, Gallaher & Brown, Jefferson City, Mo., for plaintiffs.

Robert J. Jones, Asst. Atty. Gen., State of Mo., Jefferson City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This is a class action suit brought pursuant to 42 U.S.C. § 1983, requesting monetary and injunctive relief. The case came to trial before the Court on February 13 and 14, 1986, with jurisdiction under 28 U.S.C. § 1343. Based on the evidence presented at trial and briefs submitted by the parties, the Court finds for plaintiffs, and makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

Plaintiffs are a class of approximately 277 persons employed as teachers by the State of Missouri in its Department of Corrections, and Division of Mental Health, who are participating in the state Teacher's Retirement System (TRS) pursuant to RSMo. § 169.010. Dennis Winder, Bob Voss, David Connor, Tom Garvey and Dale Johnson are representatives of the class as certified by the Court's order of September 10, 1985.

Defendant David W. Mustoe is the Executive Secretary of TRS; defendants Warren M. Brown, Edwin H. Bihr, H. Kenneth Kirchner, Richard E. Moore and Arthur L. Mallory are appointed Trustees of TRS; defendant Mary-Jean Hackwood is the Executive Secretary of the Missouri State Employees' Retirement System (MOSERS); defendant John Pelzer is the Commissioner of Administration of the State of Missouri. These defendants were sued in their official capacities only, not in their individual capacities.

Since all State employees except plaintiffs are provided fully-funded retirement benefits, the basic issue in this case is whether the statute which requires plaintiffs to pay into TRS is violative of the equal protection clause of the Constitution. Plaintiffs contend they should be participating in MOSERS, and are requesting that they be able to withdraw their money plus interest from TRS.

The legislative history of these two retirement systems is not in dispute. TRS[1] began operation on July 1, 1946. In 1955 the Division of Inmate Education was created,[2] but the teachers who were employed did not become members of TRS until August 29, 1959.[3]

MOSERS[4] began operation in September, 1957, with employees making contributions of 4% of their pay. Teachers employed by the Department of Mental Health were then eligible for participation in MOSERS. Subsequently, in 1969 Mental Health teachers were switched to TRS with those hired prior to August 7, 1969 given the option to stay in MOSERS.[5] At this time TRS was the more financially beneficial retirement system. Then in September, 1972, MOSERS became a non-contributory retirement plan for most State employees. State teachers were not, however,

---

1. Provided for in RSMo. Chapter 169.

2. House Bill No. 377, 68th General Assembly, *Laws of Missouri* 1955, p. 318 § 47.

3. House Bill No. 258, 70th General Assembly, *Laws of Missouri,* 1959.

4. Provided for in RSMo. Chapter 104.

5. House Bill No. 68, *Laws of Missouri,* p. 281.

given the option of switching from TRS to MOSERS.

All State employees are included in the federal Social Security system.[6] Public school teachers are not covered by Social Security, but contribute to TRS. Plaintiffs not only have Social Security deducted from their paychecks, but their TRS contribution as well, which makes their take-home pay less than other State employees participating in MOSERS.

Other than the fact that plaintiffs have to meet teacher certification requirements, they are more similarly situated to other State employees than to public school teachers. Plaintiffs work twelve months a year, rather than nine. Plaintiffs are covered under the State Merit System and so their salary levels are determined according to the Classification and Pay Plans, rather than by individual school boards. Plaintiffs receive the same benefit package as all other State employees except for the retirement plan. Plaintiffs receive no additional benefits which would compensate them for the fact that they pay into TRS out of their own salaries.[7]

### Conclusions of Law

■ A federal question of denial of equal protection of the laws under the Fourteenth Amendment is presented. 42 U.S.C. § 1983 provides a civil remedy against individuals who, under color of state law, deprive others of federally-protected rights. There is no dispute in this case as to the standard of review. The statute in question does not interfere with a Fundamental right, nor are the plaintiffs a suspect class that would require strict scrutiny. Therefore, the Court will apply the "rational basis test" which means the statute will not be overturned "unless the varying treatment of different groups of persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legisla-

ture's actions were irrational." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).

When dealing with social and economic legislation, the United States Supreme Court has consistently placed a heavy burden on plaintiffs by creating a "presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana,* 452 U.S. 314, 332, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). A two-step analysis has been used to determine whether a challenged statute is rationally related to achievement of a legitimate state purpose:

(1) Does the challenged legislation have a legitimate purpose?

(2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

*W. & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981).

In answering the first question, the Court cannot look to the statute itself for an articulated purpose, as the Supreme Court did in *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 458, 101 S.Ct. 715, 721, 66 L.Ed.2d 659 (1981). Nor is there any legislative history to aid in this inquiry. The Court is left only with the parties' arguments. Plaintiffs contend they have been left out of MOSERS because of legislative oversight or inaction. Defendants contend there are two legitimate reasons for requiring plaintiffs to contribute to TRS rather than be included in MOSERS: one, that according to an individual's age and financial circumstances plaintiffs may be at an advantage over other State employees by participating in TRS; two, that the State can better recruit qualified teachers if their retirement sys-

---

**6.** RSMo. § 105.340.

**7.** In Plaintiffs' Exhibit 37, retirement benefits for one class member were calculated under the formula for both TRS and MOSERS. Over a 30-year period this member would have to contribute a minimum of $45,274.54 to TRS, yet

upon retirement his benefits would be $30.00 less each month than if he participated in the fully-funded MOSERS program. This shows a tremendous financial disadvantage for class members, who on the average have a take-home salary equivalent to non-teacher State employees who are two pay ranges below them.

tem provides portability with the public school system.

Looking at defendants' first reason, they admit that plaintiffs' take-home pay is less than similarly situated State employees participating in MOSERS. Thus, all members of the class are at a *prima facie* disadvantage. That a few members might come out equal or even ahead due to their individual circumstances[8] does not legitimize the mandatory nature of legislation. The Eighth Circuit has held that rules are not unconstitutional simply because in practice it results in some inequality. *In re U.S. ex rel. Missouri State High School, etc.,* 682 F.2d 147, 152 (8th Cir.1982). The present case represents the inverse of that situation. In practice, the statute results in *much inequality,* and *some equality.* Therefore, the Court finds this first articulated reason not to be legitimate, and even assuming, *arguendo,* that it was, the legislature could not reasonably believe this statute would put the majority of plaintiffs at an advantage.

■ Defendants' second reason for keeping plaintiffs in a different retirement is "portability." They claim to maintain a pool of qualified teachers from which to recruit, retirement benefits should be automatically transferable or portable between public school jobs and the State jobs. At first blush, this purpose sounds legitimate and would pass the first step of the two-step analysis. However, the Court finds it was not reasonable to believe that the statute would promote that purpose.

Legislators are presumed to be aware of the entire statutory scheme. Missouri actually has not one, but three teacher retire-ment systems: one covers St. Louis;[9] another covers Kansas City;[10] and the rest of Missouri is covered by yet another system.[11]

It is this third system in which plaintiffs are members. Defendants admitted at trial that the St. Louis and Kansas City systems are not portable with the out-state system. Thus, the alleged recruitment advantage does not apply to teachers in the two largest public school systems in the state.

Furthermore, the legislature has made provisions for teachers at public junior colleges, colleges or universities to elect to stay within MOSERS if they so choose.[12] Similarly, the legislature has ordered MOSERS and TRS to "cooperate in developing rules and procedures for orderly transfer of system membership from [MOSERS] to [TRS] for any certified employee of the department of higher education who elects to so transfer."[13]

If in fact there was a uniform, truly portable retirement system for *all* teachers in Missouri, there might be some credence to defendants' argument that the legislature believed it would help recruit teachers by leaving plaintiffs in TRS. But this obvious hodge-podge of retirement system statutes supports plaintiffs' contention that their predicament is the result of legislative oversight or inaction.

Plaintiffs' case was bolstered by testimony at trial from two class members who actually recruit and interview prospective teachers. They said retirement benefits in general are seldom discussed and when they are, applicants are under the assump-

---

**8.** At trial plaintiffs admitted that three aspects of TRS were potentially superior to MOSERS: early retirement, disability benefits and survivor benefits. However, the vast majority of the class would not be eligible or choose to take advantage of these benefits. Furthermore, the money plaintiffs could gain if they were in the fully-funded MOSERS would clearly offset any minor loss.

Defendants also argue that portability of the retirement system between State teaching jobs and public education is an advantage. This will be addressed more specifically *infra,* but evidence at trial indicated few class members ever return to public school teaching. Rather, they move on to other State jobs within MOSERS.

**9.** Retirement System in Districts of 700,000 or over, RSMo. §§ 169.410—169.540.

**10.** Retirement Systems in Districts of 400,000 to 700,000, RSMo. §§ 169.270—169.400.

**11.** Retirement Systems in Districts of less than 300,000 Population, §§ 169.010—169.130.

**12.** RSMo. § 169.140.

**13.** RSMo. § 169.135.

tion as a State employee they would be covered by MOSERS, not TRS. Furthermore, the vast majority of class members with prior experience as public school teachers have withdrawn their money from TRS.[14]

Therefore, the Court finds that defendants have offered no purpose rationally related to a legitimate state objective. *See University of Missouri v. Dalton,* 456 F.Supp. 985, 997 (W.D.Mo.1978); *International Assoc. of Firefighters v. City of Sylacauga,* 436 F.Supp. 482, 489 (N.D.Ala. 1977). Accordingly, it is hereby

ORDERED that the statutory provisions of subsections 3 and 5 of § 169.130, RSMo., requiring plaintiffs to participate in TRS are arbitrary and irrational and, therefore, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Having made such findings and conclusions, it is further

ORDERED that the defendants in this case act in accordance with the following injunctive relief:

(1) Defendants immediately cease and desist in the administering, use and application of § 169.130(3) and (5), and that all persons hired in that capacity after the date of this order by the Departments of Corrections and Mental Health shall automatically participate in MOSERS. Nothing in this order will apply to any *former* employees of these two departments.

(2) In light of the fact that under their particular circumstances, some class members may be better off remaining in TRS, all class members will be given the option of choosing to do so. Accordingly, defendant David Mustoe, as Executive Secretary of TRS, is ordered to send notice of the decision of the Court by certified mail to each class member on or before April 18, 1986.

(3) Defendant Mary Jean Hackwood, as Executive Director of MOSERS, is directed to enroll the members of the class into MOSERS as of June 1, 1986, unless a mem-

ber notifies TRS in writing, on or before May 31, 1986, that they wish to continue their membership in TRS.

(4) Defendant Hackwood is further directed to award each member, who does not choose the option of staying with TRS, the full number of years of creditable service as they have accumulated as employees of the State of Missouri, the Missouri Merit System and the Departments of Corrections and Mental Health; the effect being as if such persons had always been enrolled in MOSERS while employed with the Departments of Corrections and Mental Health, with all of the attending benefits equal to and the same as for all other members of MOSERS, employees of the State Merit System, and Departments of Corrections and Mental Health.

(5) Defendant Mustoe is further directed to calculate and accumulate all funds paid by each member of the class who does not choose the option of staying with TRS, and on June 30, 1986, pay such accumulated contributions with interest at the rate of 6% in accordance with the same rights of other members who elect to withdraw their money from TRS.

(6) Defendants Hackwood and Mustoe are further directed to confer and make arrangements and plans for the orderly and effectual transfer of the employer matching contribution funds from TRS to MOSERS by June 30, 1987. If the defendants cannot reach a mutual agreement as to method of such transfer, the Court retains jurisdiction to resolve any disputes in this matter.

(7) All costs associated with such refund and transfer shall be borne by the defendants in their official capacities.

Also pending before the Court is class members' motion for assessment of attorney's fees. The Court cannot rule on this motion without further information. Accordingly, it is further

ORDERED that within fifteen (15) days of the date of this order class counsel sub-

---

14. An unvested TRS member, i.e. with less than five completed years of service, must withdraw

his money within four years of leaving the system. RSMo. § 169.328.

mit an affidavit of hours expended in this case, and the normal billing rate charged.