875 F.2d 191
 53 Ed. Law Rep. 850
 Christopher FELTON, a/k/a Christopher Felten, a minor child
by his next friend, Marti Felton Shiflett, Appellant,
Eddie Thurman, a minor child by his next friend, Mrs. George
E. Thurman,
v.
FAYETTE SCHOOL DISTRICT, William Akers, Ray Banning, Peggy
Clatworthy, Robert O. Young, Richard Taylor,
Richard Gingel Bach, Jim Rose, Appellees.
 No. 88-1924.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1988.
Decided May 19, 1989.
 
 William Patrick Cronan, Columbia, Mo., for appellant.
 Allan V. Hallquist, Kansas City, Mo., for appellees.
 Before LAY, Chief Judge, FAGG, Circuit Judge, and REASONER,* District Judge.
 FAGG, Circuit Judge.
 
 
 1
 Christopher Felton brought this 42 U.S.C. Sec. 1983 action against the Fayette School District (Fayette), its Superintendent, and the members of its Board of Directors (the Board). The district court granted summary judgment against Felton, and he now appeals. We affirm.
 
 
 2
 As a Fayette high school student, Felton studied auto mechanics at an area vocational-technical school under a special program offered by Fayette. Fayette conditioned participation by any student in an off-campus vocational, educational, or extra-curricular program on the student's continued good citizenship in the community. Although the dissent parses over whether this requirement should be called a "rule" or a "policy," see infra at 194, Felton throughout his brief characterizes the requirement as a rule, and we will do likewise. Felton's categorical statements pinpoint the essence of Fayette's rule: "[t]he facts in this situation are that [Fayette] require[s] good citizenship for [its] vocational programs." Felton's Brief at 15; see Felton's App. at 80. This requirement means a student must "be a good citizen in the community and [behave] in a way that brings credit to the school." Felton's App. at 81.
 
 
 3
 During his junior year, Felton was involved in the theft of auto parts. As a result of this theft, Felton was confined for a short period of time and then placed on probation by a state juvenile court. Although the area school where Felton studied auto mechanics was not the target of his thievery, the Superintendent determined Felton had violated Fayette's good citizenship rule. For this reason, the Superintendent decided to exclude Felton from Fayette's off-campus vocational program for the following year, and the Board upheld that decision. Felton was reassigned to classes in the regular high school academic curriculum.
 
 
 4
 Felton then brought this action, claiming Fayette's good citizenship rule violated the equal protection clause by discriminating against "adjudicated juvenile delinquents," Felton v. Fayette School Dist., No. 87-4375-CV-C-5, slip op. at 5 (unpublished order). The district court rejected Felton's legal argument that because juvenile delinquency is a suspect classification, Fayette's rule should be subjected to strict scrutiny. Instead, the court applied the rational basis test and upheld the rule.
 
 
 5
 Initially, we observe that in ruling on Fayette's motion for summary judgment, the district court necessarily held there "[was] no genuine issue of material fact in dispute." Id. at 3. The court stated in its explanation of the case's factual background that Fayette decided to "deny [Felton] the privilege of enrolling in the second year of the auto mechanics program in the vocational training school." Id. at 1. The court also specifically indicated Fayette's reason for this decision was Felton's violation of the good citizenship rule. Id. at 2.
 
 
 6
 In his brief on appeal, Felton insinuates the good citizenship rule was not implicated in Fayette's decision to exclude him from the vocational program. Felton suggests Fayette's true motive was to punish him for his delinquent activities by requiring him to bear the cost of tuition if he wished to continue receiving off-campus vocational training.
 
 
 7
 The difficulty with this aspect of Felton's appellate argument, however, is that he does not contend the district court should be reversed because disputed issues of material fact remain. Indeed, in the statement of facts Felton filed in support of his own motion for summary judgment and in opposition to the school's motion for summary judgment, Felton acknowledged he "was denied admission in the second year program because of the 'citizenship conduct' requirement." Felton's App. at 82. We are unwilling to permit Felton to suggest there are unresolved factual disputes when his own statement of facts ruled them out in the district court. See Wayzata Bank & Trust Co. v. A & B Farms, 855 F.2d 590, 594 n. 3 (8th Cir.1988); NRM Corp. v. Hercules Inc., 758 F.2d 676, 680 (D.C.Cir.1985). In addition, Felton cannot shift his theory of recovery after he arrives in this court, see Erff v. Markhon Indus., Inc., 781 F.2d 613, 618-19 (7th Cir.1986), and the district court was not obligated to search the record for unraised issues ignored by counsel, see Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 268 (7th Cir.1986).
 
 
 8
 Thus, Felton's suggestion that Fayette denied him school-sponsored participation in the vocational training program as an impermissible economic sanction is not an issue in the case as it comes to us. Instead, Felton renews his equal protection argument based on Fayette's enforcement of the good citizenship rule against a juvenile delinquent. See Felton's Brief at 12, 23. We turn now to that argument.
 
 
 9
 We agree with the district court that juvenile delinquency is not a suspect classification for purposes of equal protection analysis. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (recognizing only race, alienage, and national origin as suspect classifications); United States ex rel. Martin v. Strasburg, 513 F.Supp. 691, 706 (S.D.N.Y.1981) (declining to subject juvenile classification to strict scrutiny), aff'd, 689 F.2d 365, 374 (2d Cir.1982), rev'd on other grounds sub nom., Schall v. Martin, 467 U.S. 253, 281, 104 S.Ct. 2403, 2418, 81 L.Ed.2d 207 (1984). As a result, Felton must show Fayette's presumptively valid rule is not rationally related to a legitimate school purpose. See Kadrmas v. Dickinson Pub. Schools, --- U.S. ----, 108 S.Ct. 2481, 2487, 2489-90, 101 L.Ed.2d 399 (1988); Hodel v. Indiana, 452 U.S. 314, 331-32, 101 S.Ct. 2376, 2386-87, 69 L.Ed.2d 40 (1981).
 
 
 10
 In the context of evaluating a rule restricting athletic participation, we have recognized that schools themselves are better suited for devising extracurricular activity restrictions, see In re United States ex rel. Mo. State High School Activities Ass'n, 682 F.2d 147, 152 (8th Cir.1982), and that "[j]udicial intervention in school policy should always be reduced to a minimum," id. at 152-53. Hence, it is not our task to second-guess Fayette's administrators concerning the wisdom of their rule. See Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). If the reasoning underlying Fayette's rule is plausible, our inquiry is at an end. United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980); In re United States ex rel. Mo. State High School Activities Ass'n, 682 F.2d at 152.
 
 
 11
 Felton contends that under any test of constitutionality, Fayette's rule furthers no legitimate purpose. Felton argues he would have been better served by a continuation of his auto mechanics training and that the rule serves "[n]o purpose, other than to humiliate and alienate the students" affected by its behavior requirement. Felton's Brief at 18. Felton's position, however, ignores Fayette's legitimate interests in implementing rules that protect the integrity of its off-campus programs and maintain those programs' community support. Indeed, the rule appears particularly well-founded when applied to a student who seeks readmittance to an off-campus auto mechanics program after having been involved in the theft of auto parts. Thus, Felton has failed to demonstrate that Fayette's rule, aimed as it is at fostering the school's off-campus programs, is grounded on reasons that are wholly irrelevant to the attainment of a legitimate school objective. See McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).
 
 
 12
 We conclude Felton has not carried his heavy burden of convincing us that Fayette's rule is "both arbitrary and irrational." Kadrmas, 108 S.Ct. at 2490. Thus, the district court correctly determined that Fayette's actions did not deprive Felton of his rights under the equal protection clause.
 
 
 13
 Felton also argues Fayette's rule is unconstitutionally vague. Because Felton did not raise this argument in the district court, we will not consider it on appeal. See Hall v. Gus Constr. Co., 842 F.2d 1010, 1016 (8th Cir.1988). To the extent this argument may have been raised, we reject it as lacking in merit.
 
 
 14
 Finally, we need not consider Felton's qualified immunity argument. Felton conceded in the district court that Fayette's Superintendent and the individual Board members "are immune from liability." Felton, No. 87-4375-CV-C-5, slip op. at 6. Our conclusion that Fayette's rule has not caused any unconstitutional deprivation in this case also eliminates the need to review the district court's ruling that "the * * * [s]chool [d]istrict is also immune." Id.
 
 
 15
 Affirmed.
 
 
 16
 LAY, Chief Judge, dissenting.
 
 I respectfully dissent.[1]
 
 17
 For reasons not apparent to me, the majority fails to discuss the fundamental issue of the case. I sense this is because the majority deals only with a partial factual record and assumes a basic misunderstanding of the district court's analysis. As the majority opinion now stands, it simply decides a hypothetical case unrelated to the evidentiary record.
 
 
 18
 The first factual error set forth by the majority is that the school district had a good citizenship "rule." Although the school district responded in the district court that its rule was contained in the student handbook this is an erroneous statement of fact and is not supported by the record. The handbook contains no citizenship rule relating to the school curriculum. There exists a written citizenship rule relating to extracurricular activities but this does not include the actual classroom work engaged in by students. The depositions clearly reveal that there was no written citizenship rule pertaining to vocational-technical classes.[2] This is made clear in Mrs. Felten's deposition wherein she stated as follows*:
 
 
 19
 And when I asked Dr. Akers he said, well, that was just the policy that the school had, that anyone that had been into trouble could not participate in certain things of the school.
 
 
 20
 And I said--I asked him on that day--I said, "Well, is that a written policy? I would like to see it where it's written down."
 
 
 21
 And he said, "No. It's not a written policy. It's just a verbal policy we have".
 
 
 22
 And then that's when he told me, "We do have a written policy on the extracurricular activities", if someone had been in trouble that they couldn't participate in the sports programs and things like that but as far as Chris attending the Vo-Tech that was just a verbal policy that the School Board had.
 
 
 23
 And that was one of the reasons that I had gone to the School Board to their meeting that night is because I felt that Dr. Akers had made this policy up just to fit this occasion and I thought then that the School Board might--since they have nothing to document that with that it would be overturned.
 
 
 24
 Deposition of Martha Felten at 35.
 
 
 25
 The significance of the absence of a written rule is that we should discuss not whether there was a rational rule but whether the actions of the superintendent as supported by the school district were arbitrary and capricious.[3]
 
 
 26
 The fundamental issue, therefore, and clearly one raised by the plaintiff notwithstanding the protestations of the majority opinion, is whether the school district "policy" was reasonably related to the purpose intended or whether in fact it was an arbitrary and irrational punishment. The sanction imposed by the superintendent did not simply suspend Felten's right to attend vocational classes but conditioned Felten's right to take the high school course on paying tuition to do so. The superintendent stated he denied Felten the right to attend the class because he believed Felten was not a good citizen. The plaintiff clearly attacks this sanction as not being reasonably related to any citizenship purpose and on this basis asserts that the punishment violates the fourteenth amendment. What we review is nothing more than the superintendent's overreaction to the state court's finding that Felten was a juvenile delinquent. The majority's reasoning is representative of the reaction of a "super school board" and ignores the record. In effect, the majority's rationale is simply putting its imprimatur upon the finding of the superintendent and the school district that "Peck's Bad Boy" should be further punished. This is clearly an arbitrary and unlawful sanction and should be set aside.
 
 
 27
 Courts of appeals have an obligation to review the entire record. We are not bound by the district court's failure to deal with the record. Two wrongs do not make a right. Subsection c of rule 56 of the Federal Rules of Civil Procedure reads as follows: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The majority argues that it need not deal with the issue presented because the plaintiff has agreed all along that the facts are undisputed and that new factual disputes cannot be raised for the first time on appeal. This is a total nonsequitur. No one is raising a factual dispute. Dr. Akers does not dispute Mrs. Felten's statement in any way.
 
 
 28
 Felten was not merely suspended by the superintendent of the school district from his vocational classes. Dr. Akers told Mrs. Felten that her son could only attend vocational classes if he paid the $1,375 tuition. The depositions are undisputed in this regard. The majority ignores the undisputed factual record.
 
 
 29
 The majority relies strongly on the district court's reasoning which does not deal with this issue. It is readily understandable why the district court did not reach this issue because of its erroneous legal analysis.
 
 
 30
 First, the district court dismissed the school district on grounds that it was immune from liability. This was clear error. The doctrine of qualified immunity applies only to individuals and not to political subdivisions. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The Fayette School District is liable only if the implementation of its official policy causes an unconstitutional deprivation. Id. at 633, 100 S.Ct. at 1406; Monell v. Department of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Second, the district court does not review the issue because it discounted the students' standing to challenge the school sanction on the ground that there is no constitutional right to an education relying on San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 33-35, 93 S.Ct. 1278, 1296-98, 36 L.Ed.2d 16 (1973). This reasoning begs the question. This rationale misconstrues fundamental constitutional concerns about both the property and liberty interests that a student has in legitimate claims of entitlement to a public education. The Missouri Constitution reads:
 
 
 31
 A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law.
 
 
 32
 Mo. Const. art. IX, Sec. 1(a) (1875, amended 1976) (emphasis added). Missouri statutes clearly direct local authorities to provide a free education to all residents between five and twenty years of age. Mo.Ann.Stat. Sec. 160.051 (Vernon Supp.1989). There is also a compulsory attendance law that requires attendance for children between seven and sixteen years of age. Mo.Ann.Stat. Sec. 167.031 (Vernon Supp.1989). Each local board of education has its own rules specifying grounds for expulsion or suspension. Mo.Ann.Stat. Secs. 160.261, 167.161 (Vernon 1965 & Supp.1989). However, once a state extends the right of education to these students it may not withdraw that right on grounds of misconduct without adherence to the substantive and procedural rights provided by the United States Constitution. As observed by the Supreme Court, "education is perhaps the most important function of state and local governments." Goss v. Lopez, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975), (quoting Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954)). The Court in Goss goes on to say:
 
 
 33
 the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.
 
 
 34
 Id. (emphasis added). Thus, Goss makes clear that a student may not be suspended without "rudimentary precautions against * * * arbitrary exclusion from school." Id. 419 U.S. at 581, 95 S.Ct. at 740.
 
 
 35
 In the present case the school district provided the educational opportunity for students to pursue vocational training as part of their secondary education. Once provided, the school board did not have the constitutional authority to condition the right of continued access to the educational system upon payment of tuition. To require students to pay tuition under these circumstances constitutes an arbitrary sanction. Therefore, to simply dismiss the students' claims on the basis that they did not have a constitutional right to public education misses the mark and fails to address the fundamental issue.
 
 
 36
 Exacting money payment to take a course in high school hardly serves the declared legitimate interest in maintaining the integrity of the program. The students' payment of the fee does not beneficially affect the supposed integrity of the program. Under the school district's rationale, rich, delinquent students will not be deprived of their right to educational benefits, but poor, delinquent students will. The school has simply meted an additional punishment on the students which serves no legitimate school policy.
 
 
 37
 This case is analogous to Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In Plyler, Texas revised its education laws to deny free public education to undocumented school-age children while providing it to citizen children and legally admitted alien children. The state argued that the classification furthered the state's interest in preserving its "limited resources for the education of its lawful residents." Id. at 227, 102 S.Ct. at 2400. The Supreme Court rejected this argument because the record did not support the claim that the exclusion of the class of children was likely to improve the overall quality of education. Id. at 229, 102 S.Ct. at 2401. In the present case the majority opinion reasons that the school district has a legitimate interest in protecting the integrity of its off-campus programs and in maintaining the community support of such programs. The plaintiffs were not denied participation in the vocational training for these purposes. The plaintiffs were only denied the right to pursue free vocational training. Plaintiffs could have pursued vocational training by paying the school district a fee. Thus, maintaining the integrity of the program was not the goal or purpose involved; for school authorities to say so is simply utter pretext.
 
 
 38
 The school district's attempt to extract additional tuition was therefore a "fine" and has no constitutional or statutory authority in Missouri. This was a purely punitive edict by the school district. The State of Missouri has determined that individuals who violate the law are to be punished through the criminal law system and not by school districts through the imposition of additional fines. Nothing within the Missouri statutes provides any clue that the Missouri legislature intended school districts to exact fines apart from criminal law. For the school district to act in the manner it did is clearly arbitrary and unlawful. Under the circumstances, I would find that these students have been unconstitutionally deprived of their property and liberty rights to continue their education.
 
 
 39
 Therefore, I would reverse the district court's order.
 
 
 
 *
 The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 The suit was originally brought by two students. However, Felten was the only student to file a notice of appeal
 The records should make clear that Felten has now graduated. Therefore, the suit for injunctive relief is now moot. University of Texas v. Camenisch, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The only issue remaining on appeal is the issue of liability of the Fayette School District. Felten does not appeal the grant of summary judgment in favor of the superintendent and individual members of the Board of Directors on grounds of qualified immunity.
 
 
 [2]
 The application form for admission to the vocational-technical program similarly did not contain a written rule. It listed as one criterion for selection "Citizenship conduct; school & community."
 
 
 *
 According to the record, Christopher Felten spells his name Felten not Felton
 
 
 [3]
 The majority is critical of this discussion because Felten's counsel described Fayette's criterion of good citizenship as a "rule." This misses the point. The facts clearly show that the rule was nothing more than the superintendent's subjective idea of what action should be taken. In other words, the rule was nothing more than what the superintendent said it was at the time of a given incident. Since the rule is not written, it is only reasonable to look at what action the superintendent decreed in a particular case. In Felten's case, the superintendent's rule was that if a student was not a good citizen in the community he could not attend vocational school unless he paid tuition. The majority feels this injects a new theory into the case. In all due respect, this is simply a factual account of what occurred. It is not a theory. I respectively submit courts should not ignore the factual record to reach easy solutions