Claire **LETENDRE, a minor, by and through her father and next friend Leo LETENDRE, Appellant,**

v.

**MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, Respondent.**

**No. ED 79653.**

Missouri Court of Appeals, Eastern District, Division Five.

July 16, 2002.

---

James E. Hullverson, Hullverson & Hullverson, L.C., Clayton, MO, for appellant.

Mallory V. Mayse, Columbia, MO, for respondent.

JAMES R. DOWD, Presiding Judge.

Claire Letendre seeks to enjoin the Missouri State High School Activities Association (MSHSAA) from enforcing by-law 235, which prohibits students from competing on both a school and a non-school team in the same sport during the school team's season. The trial court denied Claire's request for injunctive relief and dismissed her suit with prejudice. She appeals, claiming that the association's rule violates the Equal Protection clause of the Fourteenth Amendment and her rights of free association under the First Amendment. We affirm.

The MSHSAA is a voluntary association of 750 secondary public, private and parochial schools in Missouri. It is charged with developing uniform and equitable standards of eligibility for students and schools to participate in interscholastic activities. The rules ostensibly work to avoid interference with the educational program of the school by outside activities; to prevent exploitation of high school youth and the programs of member schools by special interest groups; and to provide a means of evaluating and controlling local, state, and national contests affecting secondary schools.[1] The association is governed by a Constitution and bylaws adopted by its members. Claire's high school, St. Joseph's Academy, is a member of the MSHSAA.

At the time of trial, Claire was a 15 year-old sophomore earning good grades. She did not participate in any school-sponsored sports, clubs, student government, or organized activities, other than a prayer group, because she "loves to swim." Claire has been a member of the private Parkway Swim Club since the age of three, swimming in competitive meets since the age of five. She practices and competes with the private swim club team all year long, participating in regional and national meets that require out-of-state travel. Her swim club's practice schedule is Monday through Friday from 4:30 to 7:30 p.m. and on Saturdays from 6:15 to 9:30 a.m., swimming from 5,000 to 9,000 yards daily. Claire testified that her coach at the Parkway Swim Club enters her in every single

---

1. MSHSAA Handbook, at pages 8–9 of 2000– 2001 edition.

event offered during her swim club seasons. Claire claimed her short-term goal is to qualify for the Senior Nationals and, ultimately, the Olympics.

On January 31, 2001, Claire attended a meeting for students interested in joining the school swim team. They discussed health forms, practice times, the season schedule and MSHSAA eligibility rules. On February 12, 2001, Claire attended another school swim team meeting held immediately prior to the first practice. Claire testified that after this meeting she knew she would become ineligible for school swimming if she chose to swim with the club team.

By-law 235(1)(a) provides that

"during the sport season a student ... shall neither practice nor compete as a member of a non-school team nor as an individual participant in organized non-school competition in that same sport."

The by-laws state that a school sports season begins with the "first practice." Unlike other St. Joseph Academy students who also swam for Parkway Swim Club, Claire chose to practice with her swim club team rather than her school team.

Claire filed suit for injunctive relief to bar the MSHSAA from enforcing by-law 235, claiming it violated her rights under the First and Fourteenth Amendments. After a trial on the merits, the court entered judgment, denying Claire injunctive relief and dismissing her suit with prejudice. Claire now appeals.

When reviewing a court-tried case, we view all evidence and inferences in a light most favorable to the judgment and disregard all contrary evidence and inferences. *In Re Fabius River Drainage Dist.*, 35 S.W.3d 473, 480 (Mo.App. E.D.2000). We defer to the trial court's determinations as to the credibility of witnesses. *Id.* at 473. The trial court may believe all, part, or none of any witness's testimony. *Id.* We must affirm a trial court's judgment unless it is unsupported by evidence, against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The power of a court to review the quasi-judicial actions of a voluntary association is limited to determining: (1) whether there are inconsistencies between the association's charter and by-laws and any action taken in respect to them; (2) whether the member has been treated unfairly, i.e., denied notice, hearing, or an opportunity to defend; (3) whether the association undertakings were prompted by malice, fraud or collusion; and (4) whether the charter or by-laws contravene public policy or law. *State Ex Rel., Missouri State High School Activities Association v. Romines*, 37 S.W.3d 421, 422 (Mo. App. E.D.2001); *see also State Ex Rel. Missouri State High School Activities Association v. Schoenlaub*, 507 S.W.2d 354, 357 (Mo. banc 1974).

Courts have no power to usurp the function of the tribunals of [voluntary] associations, [like the MSHSAA] and can interfere only when those tribunals proceed without evidence or in bad faith or violate a valid part of the constitution and rules in dealing with a member, or attempt to enforce against him, to his injury, invalid provisions thereof.

*State of Missouri, ex rel. NJCAA v. Luten*, 492 S.W.2d 404, 407 (Mo.App.1973). It is only upon the clearest showing that the rules have been violated by a decision of the association's tribunal that courts should intercede. *Id.*

Claire agrees that the Association has acted consistently with its rules, given her due process and did not act out of malice. But instead argues that by-law 235 is against public policy because it is arbitrary, capricious and violates her Constitu-

tional rights to equal protection and free association as guaranteed by the Fourteenth Amendment of the United States Constitution.

The specific inequity she claims is that by-law 235 is internally inconsistent in that it does not affect those who wish to participate in non-athletic activities both in and outside of school; it does not affect those who participate in one sport in school and another sport outside of school; and it does not apply to athletes who participate in national or Olympic development competitions during a sport season. She maintains that the prohibition of simultaneous same-sport competition is irrational and unrelated to any legitimate goal of the association and asks us to declare by-law 235 unconstitutional as applied to her.

■ The Fourteenth Amendment guarantees that no person shall be denied equal protection of the law. It assures all individuals fair treatment if fundamental rights are at stake. It also eliminates distinctions based on impermissible criteria such as race, age, religion, or gender. Where there is no suspect classification or impingement on a fundamental right explicitly or implicitly protected by the U.S. Constitution, Equal Protection claims are reviewed by this Court under the "rational relationship" standard. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Explaining this standard, Chief Justice Warren wrote for a unanimous court in *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969), that "[t]he distinctions drawn by a challenged statute must bear some rational relationship to a legitimate end and will be set aside as violative of equal protection only if based on reasons totally unrelated to the pursuit of that goal."

■ Claire's claim is not based upon a suspect classification, such as race, reli-gion, national origin, or gender. Nor is it based upon a claim that her fundamental rights were violated, because she recognizes there is no fundamental right to play high school athletics. *In re United States v. Missouri State High School Activities Assn.*, 682 F.2d 147, 151 (8th Cir.1982). Accordingly, our inquiry is confined to whether there is a "rational relationship" between by-law 235 and any legitimate interest of the MSHSAA. *Id.* at 152, *citing Dandridge v. Williams*, 397 U.S. 471, 485–87, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Williamson v. Lee Optical Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

The Eighth Circuit has addressed a similar argument to the one Claire raises here. In *In re United States ex rel. Missouri State High School Activities Assn.*, 682 F.2d at 152, three students alleged the MSHSAA transfer rule violated the Equal Protection Clause because it did not apply to "non-athletic activities." *Id.* The transfer rule prohibited students who transferred from participating in interscholastic athletics for 365 days, but imposed no restriction on non-athletic activities. *Id.* at 149. The court held that the transfer rule was a reasonable and neutral regulation that did not burden the choice of private education, but merely attached a restriction to all transfers, except those falling into a specific exception. *Id.* at 153. The court found no violations of the federal Constitution, concluding that:

> A rational basis clearly exists for believing that the danger of incurring the harms involved in [the rule's subject matter] is greater than the danger of parallel harms in other areas. Once a rational relationship exists and it exists here, judicial scrutiny must cease. Whether the rule is wise or creates undue individual hardship are policy decisions better left to legislative and admin-

istrative bodies and schools themselves are by far the better agencies to devise rules and restrictions governing their extracurricular activities.

*Id.* at 152.

We have reviewed the history of the MSHSAA non-school competition standard. Since 1959 the rule has been reconsidered and modified fifteen times. The express purpose of these reconsiderations and modifications is to create standards that purport to serve the largest number of students. At trial the Executive Director of the MSHSAA identified several reasons for the adoption of by-law 235, including: (1) preventing or reducing interference with a school's academic program; (2) preventing interference with athletic programs by organized non-school athletics; (3) promoting and protecting competitive equity; (4) avoiding conflicts in coaching philosophy and scheduling; and (5) encouraging students not to overemphasize athletic competition.

The director of the MSHSAA testified that the association's 76 years of experience allowed them to conclude that the potential for harm is not as great in activities such as music, speech, debate and academics as in extracurricular sports. The Association has made, however, an exception for Olympic competitors because it is required by federal law. 36 U.S.C. 220501 et seq. The Amateur Sports Act of 1978 allows Olympic competitors to participate in interscholastic competitions, but gives organizations such as MSHSAA exclusive jurisdiction over such competitions. 36 U.S.C. 220526(a). The Amateur Sports Act also requires that national sports organizations minimize conflicts in scheduling of all practices and competitions through coordination with organizations such as the MSHSAA. 36 U.S.C. 220524(2). The National Federation of State High School Associations, including the MSHSAA, pledged to enact limited exceptions to their non-school participation restrictions to accommodate the national objectives reflected in The Amateur Sports Act. All state associations have an exception similar to this.

■ The issue for us, then, is not whether we agree with the Association, but whether the challenged rule bears a rational relationship to a reasonable goal of the MSHSAA. A rule of a quasi-judicial voluntary association "will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

■ If the classification has some "reasonable basis" it does not offend the Constitution simply because "in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911). We conclude that there are reasonable grounds for by-law 235 because a reasonable person could believe that a legitimate goal of the Association is furthered by the rule.

In *Schoenlaub,* the Missouri Supreme Court adopted the following test for reasonableness:

> the court must determine if the board's action is so willful and unreasoning, without consideration of the facts and circumstances, and in such disregard of them as to be arbitrary and capricious. Where there is room for two opinions on the matter, such action is not "arbitrary and capricious," even though it may be believed that an erroneous conclusion has been reached.

507 S.W.2d at 359.

Since its inception 75 years ago, the MSHSAA has received a mandate to value the best interests of all student athletes. In 1975, the Association identified outside

competition during the school year as one of the "principal areas of problems facing high schools and state associations." A reasonable person could conclude that it is not in the best interest of the majority of high school students to compete in the same sport at the same time on two different teams, with different coaches, different rules, different practice schedules, and different competition schedules. The Executive Director of MSHSAA explained that one purpose of the Association is to have standards that will be in the best interest of the larger number of high school students. Here there is substantial evidence to conclude that by-law 235 is rationally related to the legitimate goal of protecting that interest. Claire's Equal Protection argument must fail.

Claire's second argument is that by preventing her from simultaneously competing on her school and swim club teams the MSHSAA has violated her right to free association. The First Amendment assures the freedom of expression, including the implied right of association. The Supreme Court first recognized this right in *NAACP v. Alabama*, 357 U.S. 449, 460–61, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), declaring that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of liberty.

The Court has made clear that the right of association encompasses only two distinct cases: (1) those involving "intimate" human relationships fundamental to personal liberty and (2) those involving activities expressly protected by the First Amendment such as speech, assembly, petitioning for redress of grievances and the exercise of religion. *Dallas v. Stanglin,* 490 U.S. 19, 23–24, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). By-law 235 does not impinge upon intimate human relationships nor core First Amendment freedoms. There is, consequently, no First Amendment right for a high school student to associate simultaneously with both a school and a non-school swim team.

In *United States ex rel. Missouri State High School Activities Assn.,* the Eighth Circuit upheld an MSHSAA rule, which Plaintiffs argued impermissibly burdened their right to freely associate. 682 F.2d at 147. The Court held that "the rule does not prevent association ... nor discriminate against such association. Thus, no right is burdened and the rule is not thereby subject to strict scrutiny." *Id.* at 152.

While we might personally believe that a better rule could be drafted, one that would allow a student athlete who is getting good grades, such as Claire, to compete simultaneously on both her school and non-school swim teams, the law does not permit us to interject our personal beliefs in the name of the Constitution. Claire's constitutional challenges must fail because by-law 235 is rationally related to the MSHSAA's purpose of drafting rules that protect the welfare of the greatest number of high school athletes possible. The judgment of the trial court is, therefore, affirmed.

RICHARD B. TEITELMAN, Sp. J., and WILLIAM H. CRANDALL, JR., J., concur.