The Honorable Shirley Walters State Representative P.O. Box 1876 Greenwood, AR 72938-1876
Dear Representative Walters:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 If the voters passed an amendment to the Arkansas Constitution removing the word "adequate" from the educational requirement and simply preserved the constitutional requirement that the state provide an equal education, would the state still be obligated to provide an adequate education based on federal law or the United States Constitution?
RESPONSE
I am unable to answer this question because the education article of the Arkansas Constitution, Ark. Const. art. 14, § 1, contains neither the term "adequate" nor the term "equal." Moreover, given the virtual inevitability of litigation in the near future on the question of whether the state has complied with the Lake View requirements — litigation in which this office will have to defend the state's position — I am not situated to offer my own opinion regarding how the state's educational duties might be defined or redefined. However, I can and will discuss generally how state and federal law interact in matters involving public education.
As just noted, your question appears to be based on several faulty assumptions. First, the education article of the Arkansas Constitution never uses the term "adequate," instead ensuring only that "the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education." Ark. Const. art. 14, §3. Second, the constitution contains no express guarantee of equality in education among districts.
However, in Lake View School District No. 25 v. Huckabee, 351 Ark. 31,66-67, 91 S.W.3d 472 (2002), the court made clear that the constitutional provision just quoted entails a guarantee of adequacy:
 There is no question in this court's mind that the requirement of a general, suitable, and efficient system of free public schools places on the State an absolute duty to provide the school children of Arkansas with an adequate education.
The court in Lake View further recognized that the relative quality of education among districts implicates the equal protection provisions set forth in article 2 §§ 23, 3, and 18 of the Arkansas Constitution.351 Ark. at 52. See Dupree v. Alma School District No. 30, 279 Ark. 340,651 S.W.2d 90 (1983) (assessing the school funding formula against the equality provisions of the constitution, not the education article). Accordingly, I interpret your question to be whether the electorate could amend the education article to require something less than "a general, suitable and efficient system of free public schools" without offending some principle of federal statutory or constitutional law.
The United States Constitution at no point refers to education, and the Supreme Court has accordingly held that "[p]ublic education is not a `right' granted to individuals by the Constitution." Martinez v. Bynum,461 U.S. 321, 333 (1983), quoting Plyler v. Doe, 457 U.S. 202, 221
(1982), in turn citing San Antonio Independent School District v.Rodriquez, 411 U.S. 1, 35 (1973). However, the Court in Plyler
acknowledged the ultimate significance of education in our society:
 Public education is not a "right" granted to individuals by the Constitution. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 35 (1973). But neither is it merely some governmental "benefit" indistinguishable from other forms of social welfare legislation. Both the importance of education in maintaining our basic institutions, and the lasting impact of its deprivation on the life of the child, mark the distinction. The "American people have always regarded education and [the] acquisition of knowledge as matters of supreme importance." Meyer v. Nebraska, 262 U.S. 390, 400 (1923). We have recognized" the public schools as a most vital civic institution for the preservation of a democratic system of government," Abington School District v. Schempp, 374 U.S. 203, 230 (1963) (BRENNAN, J., concurring), and as the primary vehicle for transmitting "the values on which our society rests." Ambach v. Norwick, 441 U.S. 68, 76 (1979). "[A]s . . . pointed out early in our history . . . some degree of education is necessary to prepare citizens to participate effectively and intelligently in our open political system if we are to preserve freedom and independence." Wisconsin v. Yoder, 406 U.S. 205, 221 (1972). And these historic" perceptions of the public schools as inculcating fundamental values necessary to the maintenance of a democratic political system have been confirmed by the observations of social scientists." Ambach v. Norwick, supra, at 77. In addition, education provides the basic tools by which individuals might lead economically productive lives to the benefit of us all. In sum, education has a fundamental role in maintaining the fabric of our society.
The Arkansas Supreme Court echoed this declaration of principle in LakeView:
 That education has been of paramount concern to the citizens of this state since the state's inception is beyond dispute. It is safe to say that no program of state government takes precedence over it. In 1983, this court emphasized that "[e]ducation becomes the essential prerequisite that allows our citizens to be able to appreciate, claim and effectively realize their established rights." DuPree v. Alma Sch. Dist. No. 30, 279 Ark. at 346, 651 S.W.2d at 93. We further said in DuPree that" we believe the right to equal educational opportunity is basic to our society." Id.
351 Ark. at 56.
In accordance with the foregoing, the federal courts have generally acknowledged that educational standards are primarily a matter of local concern. As the Court noted in Missouri v. Jenkins, 515 U.S. 70, 131
(1995):
 We have long recognized that education is primarily a concern of local authorities. "[L]ocal autonomy of school districts is a vital national tradition." Dayton Bd. of Ed. v. Brinkman, 433 U.S. 406, 410 (1977); see also United States v. Lopez, 514 U.S. 549, 580 (1995) (KENNEDY, J., concurring); Milliken I, 418 U.S., at 741-742; San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 50 (1973); ante, at 113 (O'CONNOR, J., concurring).
In Miliken v. Bradley, 418 U.S. 717, 742 (1974), the Court set forth the justification for this policy as follows:
 [I]n San Antonio School District v. Rodriguez, 411 U.S. 1, 50 (1973), we observed that local control over the educational process affords citizens an opportunity to participate in decision making, permits the structuring of school programs to fit local needs, and encourages" experimentation, innovation, and a healthy competition for educational excellence."
Accord Board of Education of Oklahoma City v. Dowel, 498 U.S. 237, 248
(1991); see also Goss v. Lopez, 419 U.S. 565, 576 (1975) ("`[E]ducation is perhaps the most important function of state and local governments.'"), quoting Brown v. Board of Education, 347 U.S. 483, 493
(1954).
However, once the state extends some sort of educational guarantee to its children, the due process and equal protection clauses of the federal constitution will apply to ensure that the state complies with its obligations. See, e.g., Goss, 419 U.S. at 581 (holding that due process prohibits suspending a student without "rudimentary precautions against . . . arbitrary exclusion from school"); Rodriguez, supra (addressing an equal protection challenge to the Texas system of financing public education); Felton v. Fayette School District, 875 F.2d 191, 196 (8th
Cir. 1989) (acknowledging that any infringement on a state-granted "right of education" will trigger "the substantive and procedural rights provided by the United States Constitution").
Having set forth the above standards, I must respectfully decline to answer your specific question. As you have presented your constituents' concerns, it is unclear precisely what change in the education article they propose inviting the voters to adopt. Without knowing precisely how the amended article would read, I am simply unable to opine whether the amendment would implicate the federal law discussed above.
Moreover, given the ongoing heated debate about what the state must do in order to comply with the court's directives in Lake View, it appears all but inevitable that this office will soon be called upon to defend the state's responsive actions under the current version of article 14, § 1. This office has made it a practice to decline to opine on matters that are the subject of current or impending litigation. See Op. Att'y Gen.2002-031 ("[I]n order to avoid encroaching upon exclusively judicial prerogatives, it has long been the policy of this executive-branch office to avoid rendering opinions on matters that are either pending or appear inevitably bound to be submitted to the courts for resolution."); and Op. Att'y Gen. 96-138 (declining to issue an opinion where litigation was imminent on the question presented, where school districts had already obtained counsel in the matter, and where Attorney General's office was charged with the duty of defending a state agency). Given that the courts have expended, and appear fated to continue to expend, considerable effort to determining just what duty of education the state owes its children, I am not inclined to editorialize on this issue, particularly since this office will almost certainly soon be charged with defending whatever interpretation of this duty the state adopts.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh